ILLINOIS CENTRAL RAILROAD COMPANY *v.* HARRIETT D.
EMMERSON.

[40 South. Rep., 818.]

1. RAILROADS. *Master and servant. Death of servant. Contributory
negligence.*

The widow of a deceased railroad conductor is precluded by his
contributory negligence from recovering damages of the railroad
company on account of his death, where he, disregarding the
warnings of his associates, negligently and loosely chained a
disabled · engine to the rear of his caboose and, while running
the train, was killed in consequence of the defective connection.

2. SAME. *Assumption of risks.*

A railroad conductor, sent to pull certain derailed engines back
upon the track, assumes whatever of added risk exists in the con-
dition of the place where, or the appliances with which, he was
required to work, the same being obvious to him and unknown to
his superior officer by whom he was sent.

3. SAME. *Different departments of service.*

The widow of a railroad conductor, killed through his own negli-
gence in performing work pertaining to the wrecking department
of the road, cannot recover, notwithstanding the orders· of his
superior officer directing him to perform such work operated to
transfer him from the repair department, in which he was em-
ployed, to the wrecking department of the company.

4. SAME. *On suggestion of error. Constitution 1890, sec. 193. Defective
ways and appliances.*

Where a railroad conductor was injured because of his contributory
negligence in chaining a caboose to a defective engine, leaving
from three to eight feet of slack, and the. tender of the engine
mounted the caboose when the train was stopped suddenly, the
railroad company was not guilty of negligence in furnishing de-
fective ways or appliances so as to justify a recovery for the con-
ductor's death, under constitution 1890, sec. 193, making railroad
corporations liable for injuries to employes resulting from negli-
gence in the furnishing of defective ways, appliances, etc.

FROM the circuit court of Lincoln county.

HON. MOYSE H. WILKINSON, Judge.

Mrs. Emmerson, the appellee, was plaintiff in the court below; the railroad company, appellant, was defendant there. From a judgment in plaintiff's favor the defendant appealed to the supreme court.

Emmerson was a conductor on a work train of the Illinois Central Railroad Company engaged in the maintenance of the road. On the day of the accident two engines of said company had been derailed at a point on the line which was in the territory worked by Emmerson's train, and the trainmaster wired Emmerson to go there and pull the derailed engines back on the track. Emmerson thereupon went on the southbound track south to the place where the engines were derailed, with his engine's pilot pointed south, pushing a caboose, containing his working tools, ahead, and pulling a tender behind. His crew consisted of himself, engineer, fireman, and two brakemen. He was not advised of the character of the wreck or the nature of the work required. When he reached the derailed engines he hitched the forward end of the caboose to the tender of one of the derailed engines, using for this purpose an iron chain, and so fastening the chain that about eight feet of "slack" was left between the caboose and the tender. In this way he pulled the two engines and tenders back on the track, and then proceeded to pull them northward up the southbound track to Cold Springs; the tender of his own engine being in advance, then his own engine backing, then his caboose, with himself on the south platform; then, hitched to the drawhead of his caboose by the chain, the two engines and tenders which he had pulled on the track. As the train drew near Cold Springs, a construction train was moving southward on the same (southbound) track. In order to avoid a collision, the exigencies of the situation requiring it, Emmerson's engineer, without warning, suddenly stopped his engine. The chain, which had remained taut while the engines were being pulled, became slack,

and the two disabled engines, carried forward by their own momentum, collided with the caboose; the tender of the disabled engine mounted the platform on which Emmerson was standing, struck and broke the iron railing and ladder on the platform, and inflicted the injuries which resulted in Emmerson's death.   Mrs. Emmerson, the widow of decedent, began this suit, claiming as grounds for recovery that the order of the trainmaster, Emmerson's superior officer, to take the work train, properly employed in the maintenance of defendant's way, a different department of labor from the wrecking department, and use it to pull the derailed and disabled engines back on the track and carry them to Cold Springs, was a transfer of Emmerson to another department of labor, and was an act of negligence for which the defendant was liable; that Emmerson did not know of the defective condition of the engine attached to his caboose, nor that it would not properly strike the drawhead and bumpers of the caboose; that he did not voluntarily operate the train in such dangerous condition; and that by the unsafe condition of the disabled engine the car next to it, on which he was standing in the discharge of his duties, was rendered unsafe and dangerous; that, even if Emmerson were guilty of negligence, it was not the proximate cause of the injury.   The defendant contended that Emmerson was guilty of contributory negligence; that he was at the time a conductor in charge of unsafe cars and engines voluntarily operated by himself; that Emmerson and the engineer on the train were fellow servants and engaged about the same piece of work.

*Mayes & Longstreet,* and *J. M. Dickinson,* for appellant.

The plaintiff's case utterly broke down in its statement and its attempt to show that when Emmerson was directed to proceed to Cold Springs and pull these engines back on the track, he was directed to do something outside of the line of his ordinary duty. That service was in fact a duty which he was engaged to perform,

amongst other things, in the course of his ordinary and usual employment. It might not have been the thing that he was most commonly employed in doing. We are to be congratulated that it was not. It is not to be supposed that the occurrence of derailments and minor wrecks on the railroad is so common as to engross the time of the construction and work trains; nor is it to be supposed that every time a derailment or wreck occurs along the line of the road anywhere, that the consequences are to be so frightful as to call for a special trip on the part of the wrecker, to the exclusion of the use of any other trains or railroad crews.

The order given to Emmerson was only to "pull on track." He accomplished this assignment in safety. His injury occurred when carrying out a self-assumed task of hauling the cars a mile or more up to Cold Springs, or else a task which arose out of his regular employment. He had no special order to do it; and the allegation in the declarations that he had, is disproved by the plaintiff's own evidence.

Conceding now, for the purpose of the argument only, that the order to Emmerson by Jones, trainmaster, was an order which put him to work outside of his proper department, and to hauling those engines, that does not of itself make the company liable for injuries received by Emmerson while engaged in such work, for the reason that he is held to assume the risks of such service. 3 Elliott on Railroads, sec. 1304, and cases cited (ed. 1897).

In the fourth place, if it be further conceded that the giving of such order by the trainmaster to Emmerson was an act of negligence, for which, other conditions being fulfilled, the company would be liable, yet there is no liability in this instance, notwithstanding the general rule; and that for the reason that the giving of the order to Emmerson and the putting of him to work at pulling these engines back upon the track, and back to Cold Springs, was not of itself the proximate cause of his injury. It was only the condition under which he was working; the effective, proximate cause, the *causa causans* was something else. Our theory

is, as we will develop later, that it was Emmerson's own negligence and mismanagement in the manner in which he conducted his train and hitched the tender of No. 1135 to the caboose.  Or it may have been, as the plaintiff in the course of the trial seems to have been converted into the belief that it was, the act of the trainmen in charge of Ansley's train in suddenly releasing their air and thereby causing the rear car of that train to jump back and obstruct the cross-over; or it may have been the alleged negligence of Emmerson's own engineer, as stated above, in stopping without a signal from Emmerson, and without a warning to him of the stoppage about to be made.  But whether the *causa causans* was the one or the other of those three operating alleged causes, it was not the order of the trainmaster in setting Emmerson to work at the job of pulling the derailed engines and tenders back upon the track.  As stated above, that was only the remote cause. It was the condition; and we must get closer to the time of the accident and its immediately connected circumstances, to solve the true question which determines the liability or non-liability in this case.

In the fifth place, even if it were conceded that Emmerson was ordered to work outside of his ordinary duty; and if it were conceded that such order on the part of the trainmaster was an act of negligence; and if it were conceded that such order was a proximate or effective cause of Emmerson's injury—yet still it remains true that the peremptory instruction should have been given, because the undisputed facts in this case show that Emmerson's own negligence directly and proximately contributed to bring about his injury; that is to say, his own negligence in the manner in which he discharged the duty which he undertook to do.

Conceding for the argument that the trainmaster was negligent in putting Emmerson to this work, etc., as contended for by the plaintiff, still Emmerson's representatives are not entitled to recover because of his contributory negligence, which appears

beyond controversy in this case.    It is proved without dispute that he carried his work train down to Cold Springs knowing the work he had to do, which was to pull the derailed engines back on the track.    The telegram informed him of that fact.    His train started from Brookhaven.    There was a turntable there. There was also a Y there, yet he went down to Cold Springs with a caboose ahead of his engine instead of in its proper place behind it.

The whole trouble really grew out of that arrangement—the improper arrangement of his train by Mr. Emmerson, who had charge of the whole business, as complainant's own witnesses expressly testify.    It cannot be denied that the arrangement of the train was not customary and that the engine should have been ahead.    *Su. Ry. Co.* v. *Logan,* 138 Fed., 725.

Not only did Emmerson carry his train down to the scene of his work improperly arranged, with the caboose ahead of the engine, and thereby himself give rise to the fact of fastening the derailed tender to the caboose and removing it, by the intervention of the caboose, from the view and watchfulness of the engineer and from the superior control which it would have received if the tender had been coupled on to the coupler of the engine, which is constructed in order to do such work, amongst other things—but also it is shown by plaintiff's own evidence, as well as by the evidence of the defendant, that he chained the end of the tender, in its then dilapidated condition, and with neither tenders nor locomotives having any brakes, to the drawhead of the caboose of his own train, with a chain which was variously stated as being from twelve to ten feet long.

The testimony of all of the witnesses shows that in this chain there was left what was called a "slack," variously stated at from three to eight feet.    The plaintiff's counsel, however, made a careful showing that by the fastenings of this chain to the drawhead of the caboose on the one hand, and to the rods of the tender, on the other, about thirty-six inches of the length of the chain

was consumed; which being true, and calling the chain only ten feet long (which was the shortest length fixed by any witness), would have left a slack of seven feet.

Now, this whole arrangement was Emmerson's arrangement. He made it. The uncontradicted evidence, including the evidence of plaintiff's own witnesses, was that he supervised and conducted the whole arrangement.

These engines could have been attached without more than a foot of slack, in which case, when Steward stopped the engine of Emmerson's train, the derailed engine would not have ridden the platform.

*Green & Green,* for appellee.

Where a common error prevails in the presentation of the case both of plaintiff and defendant, neither can complain. *Clisby* v. *Railroad Co.,* 78 Miss., 948 (s.c., 29 South. Rep., 913) ; *Railroad Co.* v. *Van Os,* 63 Miss., 431; *Gulf, etc., R. R. Co.* v. *Boswell,* 85 Miss., 320 (s.c., 38 South. Rep., 43).

Where the declaration is fatally defective, but the evidence supplied the proof of the omitted allegations, the statute cures. *Clark* v. *Reed,* 12 Smed. & M., 557; *Atkinson* v. *Lindscy,* 39 Ind., 296; *Covel* v. *Smith,* 68 Miss., 296 (s.c., 8 South. Rep., 850).

As said in *Gulf, etc., R. R. Co.* v. *Boswell, supra,* speaking of instructions obtained: "This was an express recognition of the applicability of the legal proposition as stated therein, and the appellant cannot now be heard to dispute or deny their correctness. To allow this would be to permit a litigant to contest a case in the trial court on one theory, and if unsuccessful there, secure in the appellate court a reversal of the judgment because of the error in the legal principal which he had himself invoked, or at least, acquiesced in, as being both correct and applicable." *Yazoo, etc., R. R. Co.* v. *Williams.*

In *Insurance Co.* v. *Scales,* 71 Miss., 975 (s.c., 15 South. Rep., 134), the court looked through the pleadings to the facts

and determined what was the real controversy between the parties, and on the whole record, decided the questions involved, irrespective of the several rulings on the pleadings.   This was followed in *Insurance Co.* v. *Farnsworth,* 72 Miss., 564 (s.c., 17 South. Rep., 445), wherein it is said: "The parties got to the issue at last, and the controverted point is the point herein discussed and disposed of."

*Railroad Co.* v. *Schraag,* 84 Miss., 153 (s.c., 36 South. Rep., 193), is precisely in point, and there this court, in the absence of a demurrer and of objection to the evidence, permitted a verdict to stand which was based on the evidence, where the declaration did not specify the particular ground upon which the evidence was based, and where a peremptory instruction had been refused. The whole trial proceeded and was concluded upon the theory, in part, by defendant that sec. 193 applied, and that, if proven, the declarations would impose liability.   Defendant asked the "peremptory," but in *Schraag* v. *Railroad Co., supra,* this court said: "But asking for a peremptory instruction is entirely too perfunctory a method·of making so specific an objection."

The contention made here for the first time, that sec. 193 of the constitution has no application, and that in moving the crippled engines, under orders, Emmerson assumed the risk of injury by reason of their unsafe and defective condition, deserves but a moment's notice.

This contention is based upon the common law doctrine, stated in Thompson on Negligence (2d ed.), sec. 4789, that the master is not liable for injuries to servants for handling crippled cars, which the servant knows have been laid aside for repairs; but that in such case, the servant assumes the risk.

Such is the common law, in which the servant was made to assume the risk by virtue of his contract of employment.   This assumption of risk of the known dangers of the employment is a well settled principle of the common law of master and servant. It was this element of the contract of employment which became

the subject of the provisions of constitution 1890, sec. 193, viz.: "Knowledge by an employe of the defective or unsafe condition of any machinery, ways or appliances, shall not be a defense to an action caused thereby, except as to conductors or engineers in charge of dangerous or unsafe cars or engines voluntarily operated by them."

The defense of assumption of risk is not available for breach of a statutory duty. 2 Labatt on Master and Servant, p. 1904; *Narramore* v. *Cleveland R. R. Co.,* 48 L. R. A., 68.

The provision of the constitution of South Carolina that "knowledge by an employe injured of the defective or unsafe character or condition of any machinery, ways and appliances, shall not be a defense to any action for injury caused thereby, except as to conductors or engineers in charge of dangerous or unsafe cars or engines voluntarily operated by them," is the exclusion of the assumption of the risk. *Youngblood* v. *So. Car. R. Co.,* 85 Am. St. Rep., 824; *Bodie* v. *Charleston, etc., Ry. Co.,* 61 S. C., 468; *Brooks* v. *Mississippi Cotton Oil Co.,* 76 Miss., 874 (s.c., 25 South. Rep., 479).

Contributory negligence is material only where there has been no assumption of the risk. 1 Labatt on Master and Servant, 305.

It is a matter of defense for the master to show that no liability exists for the tort by reason of the assumption of the risk by the servant. The plaintiff sues in tort, and the master must defend by showing that under the contract of hiring he was exempted from liability for the tort. The burden of proof is on the master to show that the servant was the fellow servant of the injuring servant. *Chicago, etc., R. Co.* v. *Oyster,* 78 N. W. Rep., 359; *Patterson* v. *Houston,* 40 S. W. Rep., 442; *Nicholous* v. *Chicago R. Co.,* 90 Iowa, 85; *Thompson* v. *Great Northern R. Co.,* 70 Minn., 2191; *Walker* v. *McNeill,* 17 Wash., 582; *Nadan* v. *White River L. Co.,* 76 Wis., 120.

As to the knowledge of unsafe machinery, ways, or appliances, sec. 193 expressly characterizes the assumption of the risk as a "defense" of the master.

Argued orally by *Edward Mayes,* for appellant, and by *Marcellus Green,* for appellee.

WHITFIELD, C. J., delivered the opinion of the court.

We are clearly of the opinion that Emmerson brought his death upon himself by his own contributory negligence in the management and handling of his train. He had the caboose in front of the engine in going down to the place of the wreck, and kept it in front; a chain being fastened to the caboose and the derailed engine. The caboose, of course, operated to obstruct the view of the engineer. The coupling of the end of the tender, in its dilapidated condition, to the drawhead of the caboose of his own train, was made with a chain from ten to twelve feet long; and there was left, in this chain, a "slack" estimated from three to eight feet. Emmerson himself arranged this coupling. The defendant's testimony, by the witness, Frazier, was to the effect that the derailed engine could have been attached, leaving not more than a foot of slack, and it is perfectly obvious, if this had been so done, the derailed engine could never have ridden the platform of the caboose and caused this injury. One of the witnesses for the plaintiff, Brazile, testifies that the less slack you had the better, if the derailed engine was to be pulled some distance. Three witnesses, Frazier, J. J. Duffy, and J. M. Ansley, all for the defense, the latter the conductor of the other train, testified that they told Emmerson it was very dangerous to operate the train in such a way, with such slack. Frazier said that he told Emmerson to stop and take up the slack; that it was very dangerous; that it was too much, and if he did not stop, the engine would run into him; that he said, "no, it was all right;" that he told Emmerson that he himself would not stay out there, and was going into the caboose, four to ten minutes before his injury. Frazier also testified that Duffy told Emmerson that the slack was unsafe, and that Emmerson told him to go away and let him alone; that he could handle it; and that Duffy then went to the other end of the caboose. Ansley testified that he

told Emmerson he had better chain the engines better, that he had them in a very bad condition, and that Emmerson said he would fix them. The testimony of these three witnesses is uncontradicted in this respect, that they called Emmerson's attention directly to the dangerous condition of the fastening, and especially warned him, and that he declined to remedy it, saying he would fix it, meaning later. Even if it be conceded that it was the riding of the platform of the caboose by the engine which knocked the rod down on Emmerson and killed him, it is none the less true that it was the slack which enabled the engine to so ride the platform. If the engine had been properly chained, the injury could never have occurred. However much we may deplore the misfortune, it will never do to sacrifice the principles of law by making a bad precedent to suit a hard case.

The servant certainly takes upon himself, whenever sent to construct or repair, whatever of added risk may come from the existing condition of the place in which, or the appliance with which, he is to work (20 Am. & Eng. Ency. Law, 132), where such condition is obvious to him and not known to the officer sending him. This must certainly be so in a case like this, where the servant had his attention specially called to the dangerous method he himself adopted, and refused to correct the improper coupling. If it should be conceded that the order of Jones, trainmaster, to Emmerson, was an order which put him to work outside his proper department, that does not, of itself, necessarily make the company liable for injuries received by Emmerson while engaged in such work, if the injuries resulted from Emmerson's own contributory negligence on the spot and at the time. Contributory negligence is still a good defense, if it exist in such a case. 3 Elliott on Railroads, sec. 1304. We think it perfectly clear that Emmerson was guilty of contributory negligence, and hence the peremptory instruction should have been given.

*Reversed and remanded.*

TRULY, J., delivered the following dissenting opinion.

Conceding that, under the facts of this case, the defense of contributory negligence be available to the appellant railroad company, I do not think the record presents one of those "rare cases of negligence" in which the trial court is authorized to take the case from the jury.   The proximate cause of the injury was not the conduct of Emmerson, but the damaged and dangerous condition of the wrecked engines which he had been sent to remove.   It is true that he knew of their condition, but it is likewise true that the engines were not, within the meaning of the constitution, "voluntarily operated" by him.   Hence, knowledge on his part cannot avail the railroad company by whose direction he was transferred from his usual department of labor to another and more dangerous sphere of duty.   I humbly submit that the conclusion of the court renders the constitutional provision that "knowledge by an employe injured of the defective or unsafe character or condition of any machinery, ways, or appliances shall be no defense for injury caused thereby" ineffective and inapt.   To be consistent, the court must go further, and hold that an employe who performs an act, outside of his regular duty, in obedience to a direct command, acts "voluntarily," and that an engineer or conductor in charge of a work train ordered to clear away and remove a wreck "voluntarily operates" the wrecked cars and engines when hauling them off.

Upon the facts, in my judgment, the jury correctly solved the disputed question of proximate cause, and, having decided, under the proof, that the death of Emmerson was not caused by his contributory negligence, the appellee is entitled to recover.

WHITFIELD, C. J., delivered the following opinion in response to a suggestion of error.

Section 193 of the constitution does not, in our view, have anything to do with the decision of this case.   The death of Emmerson was not due to any defect in the ways or appliances.   It was due directly to his own negligent method of coupling the engine

to the caboose and handling his train, and that, too, after having been three times solemnly warned of the danger of his method of procedure. In other words, it is a simple case of contributory negligence. The negligence consisted, as stated, not in defective ways or appliances furnished by the railroad company, but in the grossly negligent and reckless manner of handling his train and coupling the engines to the caboose on the part of the unfortunate man. There is, therefore, no case made here as to knowledge of defective machinery, or defective ways or appliances, or of a locomotive voluntarily operated by the engineer. None of these elements have anything to do with this case as we view it. The very ingenious and able argument of the learned counsel for the appellee deals chiefly with the supposed application of sec. 193 to the case in hand. We cannot discover any connection between the provisions of that section and the case made by the facts in this transcript. As said, the unfortunate man owes his death directly to his own contributory negligence.

*Suggestion overruled.*

CALHOON, J., delivered the following specially concurring opinion on suggestion of error.

Judge TRULY thinks the suggestion of error should be sustained. The Chief Justice and the writer think it should be overruled. The Chief Justice and the writer think so because they are of the opinion that sec. 193 of the constitution has no reference to the facts in this record, but the writer is not of the opinion that a peremptory instruction is predicable of the facts, but thinks that, on the remand, the jury should determine as to proximate cause and negligence, on instructions charging the law, and not leaving it to them to determine the law, or mixed law and facts.