ILLINOIS CENTRAL RAILROAD COMPANY *v.* HARRIETT D. EMMERSON.

[44 South., 928.]

EVIDENCE.  *Experts.*  *Weight.*

> The testimony of an expert, having no actual knowledge of the facts of the case, may be entirely overcome by proof of actual occurrences.

FROM the circuit court of Lincoln county.

HON. MOYSE H. WILKINSON, Judge.

Mrs. Emmerson, appellee, was plaintiff in the court below; the railroad company, appellant, was defendant there. From a judgment in plaintiff's favor defendant appealed to the supreme court.

Appellee sued the appellant company to recover damages for her husband's death resulting from injuries received while he was the conductor of a wrecking train of the company. On the day of the injury two locomotives had been derailed, and the trainmaster wired decedent to proceed to the point and pull tho two engines back upon the track. When decedent reached the derailed engines he hitched the end of the caboose of his train to the tender of one of them, using a chain, so fastening it as to leave about eight feet of slack between the caboose and the tender. Getting the two engines and tenders back upon the track, and having them attached to his caboose as stated, he proceeded to pull them northward along the track, his tender being ·in advance, followed by his engine backing and his caboose, with the two disabled engines and tenders attached to the caboose as stated. In order to avoid a collision, the exigencies of the situation requiring it, Emmerson's engineer, without warning, suddenly stopped his engine, causing the disabled engines, carried forward by their own momentum, to

collide with the caboose, and Emmerson, being upon its rear platform, was so injured that he shortly afterward died.

Upon a first trial the appellee recovered a judgment, but the railroad company appealed to the supreme court, obtained its reversal and the grant of a new trial. *Illinois Central Railroad Company* v. *Emmerson,* 88 Miss., 598; 40 South., 818. The facts are stated in said reports.

On the second trial of the cause, after the reversal, plaintiff by leave of court amended her declaration charging that Emmerson's train was suddenly and negligently stopped by its engineer by reason of the negligent obstruction of the track by another train of cars under control of one Ansley, a conductor of the railroad company, thus basing the liability of the company upon the alleged negligence of a servant of the company upon another train of cars than the one on which decedent was employed. On the trial appellee sought, by the testimony of one Jenkins, a locomotive engineer, to show that the method employed by Emmerson in hauling the disabled engines with a chain of length as shown in evidence and stated above, was proper under the circumstances. There was a verdict for the appellee in the sum of $20,000.

One Jenkins testified for plaintiff that he was in the employ of the Brookhaven & Pearl River Railroad Company, and that he had been an engineer for twenty-seven and a half years (twenty-one of which were with the Illinois Central and four years with the Iron Mountain) and is still a locomotive engineer; that the ordinary equipment of a caboose of the Illinois Central is a chain to be used in case of the pulling out of a draw head, and frogs for replacing cars derailed.

*Mayes & Longstreet,* and *J. M. Dickinson,* for appellant.

In the course of the first trial, and after plaintiff introduced her evidence in chief, she moved to amend her declaration by inserting an averment that Emmerson's train was " suddenly and negligently stopped by its engineer by reason of the negli-

gent obstruction of the track by another train of cars," etc. The court below allowed the amendment over the defendant's objection. Defendant then moved for a withdrawal and continuance, on the ground of surprise, which the court granted. Thereupon the plaintiff voluntarily withdrew her amendment, and proceeded with the case. She was awarded a judgment, from which the former appeal was taken. On the hearing on appeal, as reported in *Illinois Central R. R. Co.* v. *Emmerson,* 88 Miss., 598; 40 South., 818, this court said: "We are clearly of the opinion that Emmerson brought his death upon himself by his own contributory negligence in the management of his train."

When the court below again took jurisdiction of the case on the remand consequent on the reversal of the first judgment, the plaintiff amended her original declaration so as to incorporate into it the identical amendment which she was allowed to make on the first trial, and which she withdrew as above stated. The result of this amendment was to incorporate into the declaration the averment that Emmerson's train was suddenly and negligently stopped by its engineer by reason of the negligent obstruction of the track by another train of cars of defendant's, namely, Ansley's train. The declaration having been so amended, the trial proceeded, and the outcome was a judgment against the defendant from which this appeal is taken.

A careful examination of this record will show that the plaintiff on the second appeal made out by the evidence of the eyewitness, exactly the same case that was made out on the first trial, in which the judgment was reversed by this court on the ground that the undisputed evidence showed contributory negligence. The new trial has not altered this feature of the case in the slightest. The amendment of the declaration was useless as a legal proposition, because the averments of the original declaration were broad enough to include the matter which the amendment was intended to cover; and if the court will consult the transcript on the first appeal it will see that

the same identical evidence about the alleged negligence on the part of Ansley's train in obstructing the track and causing thereby the sudden stopping of Emmerson's train, was given as fully and by the same witnesses and in the same way as they are proved here. The only change was the swapping of one opinion witness for another and kinder.

Moreover, when all is said and done, under the view of the case which this court has announced, the negligence on the part of Ansley's train, if it occurred, is immaterial, for the reason that if it were negligence at all, it was negligence of the railroad company, and is nothing but mere negligence; and the defense of *contributory* negligence on the part of Emmerson is just as directly and clearly applicable to that source of negligence as it is to any other source of the company's negligence.

On the former trial this court held that the case as made showed that the plaintiff could not recover because of the great negligence of Emmerson in the making up of the train of which he was conductor. And on this controlling point, as announced in the previous decision of this court, and under the settled law of the case, the same conclusion must be reached for the reason that exactly the same showing is made as to contributory negligence on the part of Emmerson. It is alleged by plaintiff in her amended declaration, that Ansley's train negligently obstructed the track, but it is not proved that there was any such negligence. The specific charge is against the engineer of that train in his releasing the air, and allowing the slack of the train to run out, thereby causing his rear car to kick back about three feet over the track on which Emmerson's train was moving. This was not such an act as the court, under the circumstances, can take cognizance of as negligent. It was rather one of those accidental results of a common act, so far as the engineer of Ansley's train is concerned, which the law does not impute as negligence.

In the presentation of their case to the jury on the second trial the plaintiff did make one change. She substituted Jen-

kins, as an expert witness, in the place of one Brazil, whom she relied upon in the first trial. We shall not discuss the credibility of this most extraordinary " expert " witness. We shall only call attention to the fact that he did not even profess to know anything about the facts of the case, expending his expert opinion upon sundry matters, in which opinion he was unanswerably and most terribly overwhelmed by the very fact of Emmerson's death in the way it occurred. *Res ipsa loquitur.*

Jenkins' opinion that the more slack the better, differs from that of every other witness on the stand; but, also, it differs from common sense and common knowledge. Every one knows that the blow of a battering ram propelled by a certain amount of active energy over a distance long enough for the mass of it to gather momentum, is more destructive than a mere push, even with the same power behind it. Who ever pushed in a nail with a hammer ?

The opinion expressed is absurd on its face; for if sound, then it is an act of negligence to couple up short, and every train should be made up with chains, with long slack between the cars. It is so manifestly absurd, that it could not of itself (and it was the only change in plaintiff's case) call for any submission of the question of contributory negligence to the jury. *Railroad Co. v. Teams,* 75 Miss., 147.

*Quin & Williams,* and *Green & Green,* for appellee.

Although there have been two trials of this cause, Jones, the appellant's trainmaster, and the different employes who were on Ansley's train when Emmerson was killed, have never been called upon by appellant to testify. Hence the presumption is that their testimony would have been adverse to the appellant. *Bunckley v. Jones,* 79 Miss., 1; *Calhoun v. Barnett,* 40 Miss., 599; *Anderson v. Telephone Co.,* 86 Miss., 341. This is particularly true on this trial, because Code 1906, § 1895, making proof of injury inflicted by the running of a locomotive or cars *prima facie* evidence of want of reasonable skill and

care on the part of the servants of the railroad company in reference to such injury, applies now in case of employes of the railroad company who may have been thus injured. Here the presumption was that the conduct of the crew of Ansley's train in so handling it was negligent. *Yazoo, etc., R. R. Co.* v. *Landrum,* 89 Miss., 399; 42 South., 675.

Jenkins, a witness for appellee, and an engineer of over twenty-five years' experience, testified that the method in which the crippled engines were attached to the caboose of Emmerson's train, was the correct method; that if the crippled engines had been tied up closely to the caboose they would have injured the caboose; and if attached to the end of Emmerson's locomotive they would probably have derailed the locomotive. The track over which the locomotives were to run had not been surfaced, and in fact gravel was being carried down to be placed on this track at the time, or shortly before. With this track in its unsurfaced condition the oscillation of the engines and caboose would have been greater than on a good track, and the engines would have been more apt to have ridden the platform of the caboose if tied up close, than if at a distance where the caboose could be kept out of the way of the locomotives. If the engines had been tied up close to the caboose, they would in all probability have damaged the railroad company's property, and, moreover, it is admitted by all of the witnesses that it is impossible to take up all of the slack.

It is in conformity with the law of physics that the weight or mass multiplied by the velocity equals the energy or impact. If these two dead engines, without means of control, were started into motion, and were within six inches of the caboose, and the caboose for any reason were stopped suddenly, the impact of the engines upon the platform of the caboose would be according to the law stated. The advantage of putting them at the end of the chain, and having as much slack as practicable, was that in going over this rough track they could be so far removed from the caboose as not to injure it. Being some

distance off, the caboose could, by signaling, be kept out of the way of the following engines, and thereby collision be avoided. And, again, the impact would be less where the engines had to overcome the friction of the track between the caboose and themselves.

That Emmerson was upon the back platform of the caboose is explained by the fact that he had to watch the chain and engines so as to keep the chain taut, and to prevent the heavy engines from bumping against the caboose and thus injuring the company's property.

If Ansley and his engineer had exercised proper care, and seen to it that their train did not, by a sudden kick back, obstruct the track and cause Emmerson's engineer to check his engine and train suddenly, the injury would not have happened. The negligence of the appellant's servants on another train of cars was thus a proximate cause of the injury to Emmerson. Another proximate cause was that Emmerson was executing the order of the trainmaster, who had the control and direction of his services. The proximate cause of an injury is a question of fact for the jury, hence it was correct for the lower court to refuse the peremptory instruction asked by appellant. 26 Am. & Eng. Encyc. Law (2d ed.), 598; 2 Thompson Neg., 1010; *Spalding* v. *Flint,* 159 Mass., 587; *Texas R. R. Co.* v. *Reid,* 88 Texas., 439; *Robertson* v. *Boston R. R. Co.,* 160 Mass., 191.

The negligence of the appellant was fully and fairly submitted to the jury, who found that there was negligence on its part and none on the part of the deceased. Hence the judgment should be affirmed. *Bell* v. *R. R. Co.,* 30 South., 821; *Stevens* v. *R. R. Co.,* 81 Miss., 207; *R. R. Co.* v. *Humphries,* 83 Miss., 734; *R. R. Co.* v. *Brooks,* 85 Miss., 275.

The present record, showing the testimony of Jenkins, an expert railroad engineer of many years' experience, who testified that Emmerson did right, and that he acted properly under the circumstances, which testimony was not before this court

on the former appeal, makes the case for appellee stronger than before. And as two juries have decided the case favorably to appellee, this court on the question of fact, namely, as to the proximate cause of the injury, should not disturb the verdict.

Argued orally by *Edward Mayes,* for appellant, and by *Marcellus Green,* for appellee.

WHITFIELD, C. J., delivered the opinion of the court.

The case presented by this record differs from the same case, as presented before, in but two respects: First, the amendment, which was offered and withdrawn on the former trial, predicating the right to recover on the fact that the blocking of the switch line on which the train of cars Emerson was on, compelled him to check suddenly his train, as a result of which, as claimed, the injury was inflicted, was made in the declaration on this trial; and, second, that the expert witness, Jenkins, was introduced and testified for the appellee.

So far as the amendment is concerned, it is sufficient to say that the testimony in the case makes overwhelmingly plain that the proximate cause of the injury was the undue slack in the chain, as explained in our former opinion. If the derailed car had been coupled as it ought to have been coupled, there is no reason to believe that the injury would have occurred at all, on the testimony disclosed by this record. This leaves the case precisely as it was before, with the exception of the testimony of this expert. The cross-examination of this witness very much shakes its value if it had any at all; and at last it is nothing except the purely speculative opinion of this expert as to whether this coupling was properly effected. He squarely testifies, it is true, that it was made just as it ought to have been made, in his opinion as an expert, and that the greater the slack the less the likelihood of danger. We confess ourselves unable to appreciate this view of the

witness.   It is idle for any witness, however expert, to testify that a certain way of coupling with the slack shown to have been left in this case could not have produced the injury, when the evidence of the eyewitnesses conclusively demonstrates that that very thing did produce the injury.   "*Res ipsa loquitur*" is a perfect answer to the opinion of the expert witness.

As pointed out in our former opinion (88 Miss., 598; 40 South., 818), the unfortunate man was repeatedly warned of the danger of his position and of the peril resulting from the improper coupling.  We stated all this in our former opinion, and merely refer to it again, to say that we are thoroughly convinced, now as then, that the injury was solely attributable to the gross contributory negligence of the deceased, Emmerson.   Deplorable as such deaths are, and sympathizing profoundly, as we do, with those who must suffer in consequence, nevertheless it is not for this court, because of its sympathy, to impose liability where the law and the facts of the case clearly show none exists.   The court below should have given peremptory instructions to find for the defendant.

*Reversed and remanded.*