## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

JOHN L. BARB AND F. S. WILLIAMS v. THOMAS J. LOWE.

April 25, 1955.

Record No. 4346.

Present, All the Justices.

The opinion states the case.

*Penn, Stuart & Phillips*, for the plaintiffs in error.

*Stant & Roberts*, for the defendant in error.

HUDGINS, C. J., delivered the opinion of the court.

Thomas J. Lowe instituted this action against John L. Barb and F. S. Williams to recover compensation for personal injuries and damage to property alleged to have been caused by the negligence of John L. Barb driving a pick-up truck, as an employee of F. S. Williams. The verdict for defendants returned by the jury on the first trial was set aside by the trial court, and a new trial was ordered. On the second trial the jury returned a verdict for plaintiff, on which judgment was entered. We allowed defendants this writ of error to review the action of the court in setting aside the first verdict.

A verdict disapproved by the trial court is not entitled to the same weight as a verdict approved by it. However, defendants, having obtained a verdict on the first trial, are entitled to have the credible evidence considered in the light favorable to them, and if it is sufficient to support the verdict all adverse evidence may be disregarded. Guided by this principle, the testimony may be summarized as follows:

The accident occurred in the City of Bristol at the intersection of Wagner and Bradley Streets. Wagner Street extends north and south and the hard surface on it is 15 feet wide. Bradley Street extends east and west and the hard surface on it is 18 feet wide, with a dirt shoulder several feet wide on each side. On the morning of August 19, 1953,

Barb, with Gene Camper riding in the cab with him, was driving north on Wagner Street. He stopped at the intersection and seeing no traffic approaching from either direction turned right into Bradley Street. As he had about half way completed the turn he saw the automobile driven by Lowe on Bradley Street approximately 478 feet from the intersection, approaching from the east, traveling in the middle of the street at an excessive speed estimated to be between 50 and 60 miles an hour. After he had completed his turn in the proper lane and had gotten approximately 30 feet from the intersection, Lowe's car was approximately 35 feet in front of him, or 65 feet from the intersection. At that moment each driver "cut" his vehicle sharply to the right—Barb to the south and Lowe to the north. The vehicles passed without colliding. The right wheels of Barb's truck ran over on the south shoulder and he proceeded on his way without any undue incident. Lowe's automobile ran off the hard surface on to the north shoulder of Bradley Street and struck an electric light pole on the northeastern side of the intersection, 7 feet 4 inches from the northern edge of the hard surface of Bradley Street.

Carter Garrett, Jr., a member of the police force of the City of Bristol, arrived at the scene within ten minutes after the accident occurred. He testified that Lowe's vehicle was demolished. The right front fender of the car struck the electric light pole with such force that the vehicle "bounced" 8 feet from the pole with its rear wheels standing several feet out on the hard surface. The right tire tracks of Lowe's vehicle indicated that the vehicle had run off the hard surface onto the northern shoulder 30 feet east of the pole and had skidded 20 of the 30 feet to the pole. This witness stated that while he was at the scene investigating the accident Lowe told him "that he was driving down Bradley Street and this truck pulled off Wagner making a right-hand turn, and that he did not see the truck until he was up on it". Due to defective eyesight Lowe could not see well without glasses. His glasses were found in a case on

the front seat with a broken lens. Lowe testified that he was wearing his glasses and denied that they were in the case at the time of the accident.

Barb testified that he did not hear the noise of impact of Lowe's vehicle with the pole and did not know what happened until he had driven some distance east on Bradley Street when Camper told him that he believed that there had been a wreck. He drove on several blocks to his employer's place of business and immediately returned to the scene and told Lowe and the officer that he was the driver of the truck that had passed just before the wreck.

■ The foregoing testimony, if accepted as true, is sufficient to sustain the verdict for defendants. Indeed, the plaintiff concedes this, for in his brief he states: "Appellants' statement of facts is correct insofar as their theory of the case is concerned if the evidence of Barb and Camper is to be taken at face value as the jury must have done in order to reach their verdict."

However, he contends that the testimony of the two witnesses is inherently incredible and should be disregarded. This contention is based on the application of a standard of mathematical exactness to that part of their testimony regarding the estimated speed of the two vehicles and the distance each traveled immediately before the impact. Camper's testimony corroborates the testimony of Barb who testified that while making the right-hand turn in his proper lane he saw plaintiff's car coming over the crest of a low hill in Bradley Street approximately 478 feet from the intersection. While he, driving in low gear at approximately 5 miles an hour, had gone approximately 30 feet from the intersection Lowe's car had approached to about 35 feet in front of him and 65 feet from the intersection. Plaintiff's argument is: "Therefore the Lowe car must have been at least 460 feet away; yet both Barb and Camper claim that the Lowe vehicle covered the distance between the two vehicles while Barb drove his vehicle to a point about 35 feet east of the intersection, a physical impossibility at the relative speed of

the two vehicles, and if true the Lowe car would have to have been driven at over 100 miles per hour."

The testimony of a lay witness as to his estimates of distance in feet and yards should not be considered to be mathematically exact. Such testimony at best is an approximation involving estimates, best judgments and opinions. "This kind of evidence is peculiarly for a jury. If a witness has given incorrect estimates of distances where events are happening quickly, this is a matter to be considered by the jury in weighing the testimony. It is not ground for holding that his entire testimony is incredible, unworthy of belief, and as a matter of law to be excluded." *Saunders* v. *Hall*, 176 Va. 526, 11 S. E. (2d) 592, 596.

██ The testimony of the police officer as to the physical facts and the statement of Lowe to him at the scene while he was investigating the accident tend to support defendants' theory of the case. Plaintiff's attempt to eliminate this testimony from consideration is confined to the following paragraph in his brief: "Garrett's testimony is contradictory and without probative value when considered in the light of all the evidence. It is suggested that his testimony reveals his inaptitude as an investigating officer and why he abandoned his efforts as an investigator."

Plaintiff does not state wherein this witness' testimony is contradictory nor wherein it lacked probative value. There is some difference in this witness' testimony as to estimated distances and the exact distances shown by measurement. On cross-examination he testified that at the time of the accident he did not measure the width of Bradley Street nor the distance of the pole from the hard surface, and that his estimates of these distances were that the hard surface of Bradley Street was 20 feet wide and the pole 9 feet from the hard surface. He complied with the attorneys' request, returned to the scene, measured the distance with a tape, and testified that the exact width of Bradley Street was 18 feet 4 inches and that the pole was 7 feet 4 inches from the hard surface. This difference between estimated distance and

measured distance is not sufficient to discredit his whole testimony.

We find nothing inherently incredible in the testimony of the three witnesses for defendants.

Plaintiff contends that even if the evidence is sufficient to support the verdict for defendants the court's judgment in setting it aside should be sustained on the ground that the court gave erroneous instructions which deprived him of a fair trial.

His motion to set aside the verdict was based on two grounds: (a) that "the verdict is contrary to the law and without evidence to support it"; and (b) error of the court in "the giving of instructions requested by defendants over the objection of the plaintiff." The court set aside the verdict on the ground that it was "contrary to law and the evidence and without evidence to support it." Neither in the original manuscript nor in the printed record is there anything tending to show to what specific instruction or instructions plaintiff objected. It does not appear from the record that the plaintiff stated to the trial court his grounds for objections to any instructions. Under the Rules of Court no assignment of error will be considered by this Court unless exceptions were taken to the ruling of the court and the grounds of such objections stated with reasonable certainty. Rules of Court 1:8, 5:1–4. The grounds of objection to the instructions, stated for the first time in this Court, are not persuasive, but even if they were we could not consider them on this record. *Van Dyke* v. *Commonwealth*, 196 Va. 1039, decided this session of the Court.

For the reasons stated the judgment of the trial court on the second verdict is set aside and the first verdict for defendants is reinstated, on which a final judgment for defendants is here entered.

*Reversed and final judgment.*