**FRANK'S PLASTERING COMPANY, a Corporation, Robert C. Frank, Hoffman Trucking Company, a Co-partnership, and Clarence Hoffman, Appellants,**

v.

**Wilbur KOENIG, Appellee.**

**FRANK'S PLASTERING COMPANY, a Corporation, Robert C. Frank, Hoffman Trucking Company, a Co-partnership, and Clarence Hoffman, Appellants,**

v.

**Adolph BRUGGEMAN, Appellee.**

**Nos. 17753, 17754.**

United States Court of Appeals Eighth Circuit.

Feb. 16, 1965.

Thomas J. Walsh, of Haney, Walsh & Wall, Omaha, Neb., Robert W. Haney, Thomas J. Walsh and Richard L. Walentine, of Haney, Walsh & Wall, Omaha, Neb., on the brief, for appellants Frank's Plastering Co., Robert C. Frank, Hoffman Trucking Co., a Co-partnership, Clarence Hoffman, and Bernadine Lane.

Joseph H. McGroarty and Larry E. Welch, Omaha, Neb., for appellant Betty R. Prokop.

Frederick M. Deutsch, of Deutsch & Hagen, Norfolk, Neb., for appellees.

Before VOGEL, MATTHES and RIDGE, Circuit Judges.

VOGEL, Circuit Judge.

These are actions for money damages arising out of an automobile accident that took place on November 21, 1961, at about one o'clock a. m. at a point approximately two and a half miles west of the Pilger Junction on U. S. Highway No. 275 in Stanton County, Nebraska. Diversity of citizenship and the amounts involved satisfy federal court jurisdictional requirements.

At the time of the accident, plaintiff-appellee Wilbur Koenig was operating a 1962 International truck-tractor owned by plaintiff-appellee Adolph Bruggeman. He was driving in a westerly direction on the highway, towing an empty stock trailer, also owned by Bruggeman. At the same time Bert O. Lane and Bob Lawrence Prokop were occupying a 1961 International truck-tractor, also pulling an empty stock trailer, owned by Frank's

Plastering Company, a corporation, and leased to Hoffman Trucking Company, a co-partnership, defendants-appellants. Lane and Prokop were employees of Frank's Plastering Company and Hoffman Trucking Company. They were driving the described unit in an easterly direction on the highway. The two vehicles collided, leaving the principal issue the question as to which was on the wrong or its left side of the center of the pavement. It was not determined who was driving the eastbound unit, as both Lane and Prokop were killed in the accident.

The jury before whom the cases were tried returned a verdict in favor of the plaintiff-appellee Koenig in the amount of $40,425.22 and a verdict in favor of the plaintiff-appellee Bruggeman in the amount of $11,563.98. Originally two additional suits for damages for wrongful death were commenced against Bruggeman and tried before the jury at the same time, each brought in behalf of the widow and children of Lane and Prokop. In each case the jury returned a verdict in favor of the defendant Bruggeman. Appeals instituted in those two cases have subsequently been dismissed, so that there are involved herein only the two cases, one brought by Wilbur Koenig and the second brought by Adolph Bruggeman.

The trial court's opinion overruling appellants' motions for judgment notwithstanding the verdicts or for new trials is published at 227 F.Supp. 849.

On appeal to this court, the defendants-appellants raise five alleged errors which will be separately discussed.

"I.

"*The Trial Court committed reversible and prejudicial error in admitting into evidence appellees' Exhibit No. 36.*"

■ ■ Exhibit No. 36 is a photograph of the north curb and shoulder of Highway 275 at or near the scene of the accident. It was initially identified by Officer Carl W. Scheel of the Nebraska State Patrol, who testified that it was a fair and true reflection of the highway "as it existed there that evening", although he could not recall being present when it was taken. He testified that the letter "X" on the photograph signified the location of a certain black mark on the north curb. Exhibit 36 was actually taken by the witness William I. Hagen, apparently on November 27, 1961, or six days after the accident. This was the date on which the witness accompanied Officer Scheel to the scene of the accident. The exhibit bears three letters, "X", "Y" and "Z". The letter "Z" indicates the position of a stake on the north shoulder, placed there by Scheel on the night of the accident and locating a mark or depression in the grass and apparently made by the rear tandem wheels of the Bruggeman trailer. The letter "Y", according to Scheel, refers to the location of a second mark or depression leading from the north curb to the front tandem of the Bruggeman trailer. It is the letter "X", supposedly marking a black or smudge mark appearing in the photograph, that according to the appellants taints the exhibit with prejudicial error. Appellants contend that Exhibit 36 was inadmissible for two reasons: One, there was no showing made by appellees that the conditions at the accident scene at 9:00 or 9:30 o'clock in the morning some eight or eight and a half hours following the accident, at which time witness William I. Hagen observed the mark, were the same as existed immediately after the accident; and, two, there was no showing that the mark was left by either of the motor vehicles involved in the accident. Witness Hagen, who took the photograph, testified that he saw the black mark on the curb when he arrived on the scene about 9:00 a. m. of the day of the accident. Exhibit 45, a photograph taken at the scene of the accident at approximately 3:00 o'clock a. m. or about 1.5 hours after the accident and while the Bruggeman trailer was still in place, does show the black mark. Officer Scheel identified the black mark in Exhibit 45, taken 1.5 hours

after the accident, and the black mark in Exhibit 36, taken 6 days after the accident, as in his opinion being the same. We think there was sufficient identification of Exhibit 36 to justify its receipt and we find no abuse of the discretion which rests primarily on the trial court to determine its admissibility. See Jones v. Goodlove, 8 Cir., 1964, 334 F.2d 90, 94, and cases therein cited. At best, appellants' objection went to the weight to be given the exhibit, not its admissibility. We find appellants' first point to be without merit.

"II.

"*The Trial Court committed reversible and prejudicial error by permitting the expert witness of appellees to express an opinion on the point of impact.*"

■ During the course of the trial appellees called as a witness J. Stannard Baker. In response to a hypothetical question, Baker was allowed, over objection, to express an opinion as to the point of contact of the two vehicles. Appellants first attack the admission into evidence of the opinion on the grounds that the trial court abused its discretion by allowing the expert witness to exceed the permissible bounds of opinion testimony and enter into the realm of speculation and conjecture. Baker's qualifications as an expert witness were rather impressive. Appellants make no attack thereon. He was employed as a Director of Research at the Traffic Institute of Northwestern University, had had many years of experience, studying, observing and performing experiments in connection with the behavior of vehicles under emergency conditions and crashes and was the author of a number of books in the field of accident investigation. He observed the scene of the accident on December 9, 1961. He viewed the damaged vehicles, made measurements, examined photographs and a diagram of the vehicles in the positions in which they came to rest after the accident, being Exhibit 2 properly admitted herein. Baker was asked if, based upon all of the exhibits

and the testimony of the witnesses and his own observations, he could express an opinion as to the location on the highway of the Hoffman unit and the Bruggeman unit at first contact. He replied that he could and, over objection, was allowed to express his opinion as follows:

"A. My opinion is that the left front end of the Hoffman tractor was approximately 3 feet north of the center line of U.S. 275 when the vehicles collided; that the tractor and trailer were headed approximately 3 degrees to the north of east, that is, toward the left, and that the Bruggeman trailer was about 15 inches to the north of the center line at its front end. It would be a little closer at the wheels, and that it was nearly parallel to the center line or possibly a little toward the right, aimed a little toward its right, that is, to the north.

\*     \*     \*     \*     \*

"In forming the opinion I have just given I have made some diagrams to illustrate it. These diagrams are identified herein as Exhibits 57, 58 and 59 and they were prepared by me.

"Q. Are they accurate insofar as they purport to show what they show?

"A. Yes, to scale."

Appellants concede the applicability of Rule 43(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., to the effect that:

"  \*   \*   \*  All evidence shall be admitted which is admissible under the statutes of the United States, or under the rules of evidence heretofore applied in the courts of the United States on the hearing of suits in equity, or under the rules of evidence applied in the courts of general jurisdiction of the state in which the United States court is held. *In any case, the statute or rule which favors the reception of the evidence governs* and the evidence shall be presented according to the most convenient method pre-

scribed in any of the statutes or rules to which reference is herein made. * * *" (Emphasis supplied.)

Appellants also concede the rulings of this court in dealing with the admission of expert opinion testimony concerning the point of impact in Een v. Consolidated Freightways, Inc., 8 Cir., 1955, 220 F.2d 82, affirming Een v. Consolidated Freightways, Inc., D.C.N.D., 1954, 120 F.Supp. 289; Lofton v. Agee, 8 Cir., 1962, 303 F.2d 287; Rhynard v. Filori, 8 Cir., 1963, 315 F.2d 176; and an expert's opinion as to speed as received and approved by this court in Solomon Dehydrating Co. v. Guyton, 8 Cir., 1961, 294 F.2d 439, certiorari denied, 368 U.S. 929, 82 S.Ct. 366, 7 L.Ed.2d 192. Appellants would distinguish the rule of those cases on the ground that " * * * there is a complete absence of physical evidence on which to base such an opinion." We do not agree. Baker had before him the plan and profile showing the highway, Exhibit 1, as well as Exhibit 2, being a drawing showing exactly where the vehicles came to rest, the wheel marks that were made by the Bruggeman trailer from the black mark on the north curb to a point where the Bruggeman trailer came to rest, as well as numerous photographs; he was informed of the weight and velocity of each vehicle, the extent of engagement of the two vehicles, etc., from all of which he reconstructed the accident in reverse. We think his competency to be allowed to express an opinion therefrom came within the sound discretion of the trial court and no prejudice was involved in the receipt thereof. See Jones v. Goodlove, supra, 334 F.2d at page 94. We hold that the trial court was well within the permissibility rule when he allowed Baker's opinion to be received. See, also, Krizak v. W. C. Brooks & Sons, Inc., 4 Cir., 1963, 320 F.2d 37, 42, and the many cases cited therein.

The second challenge to the hypothetical question is that it was defective in that it failed to include material evidence vital to the issue, pointing out that it did not include the testimony of the appellees' witness and sole survivor to the accident, Wilbur Koenig. Koenig's testimony was to the effect that the Bruggeman equipment was two inches from the north curb immediately before the impact. The purpose of having the expert testify was to obtain an opinion as to the point of impact. The failure to include Koenig's statement thereon was certainly not error. Additionally, appellants' counsel could have brought that fact out on cross-examination, as he did regarding other matters not included in the hypothetical question.

In a case most similar to that with which we here deal, the late Judge John Sanborn stated the rule in this circuit in Lofton v. Agee, supra, 8 Cir., 1962, 303 F.2d 287, 288, as follows:

"It is now contended by the defendant that this Court should order a third trial of the plaintiff's case because expert opinion evidence was admitted as to the point of impact, the angle of impact, and the position of the two vehicles with respect to the center of the roadway, when they collided. This opinion evidence, which was thoroughly objected to by the defendant, was based upon direct evidence as to the events leading up to the collision, the position of the vehicles after they had come to rest, and the skid marks leading up to the wreckage. The expert was a professor of mechanical engineering at the University of Nebraska, who had made a study of the forces involved in the motions of automobiles, their behavior during stopping and during acceleration, and the behavior of metals and materials that come into contact. He gave it as his opinion that, since the truck came to rest with its right side three feet and five inches from the right (west) side of the bridge, since the skid marks left by the truck ran straight up to the point where it came to rest, and since the truck bed had a width of eight feet, the left side of the truck had extended two feet into the east lane of the roadway on the

bridge at the point where the vehicles came together.

"We are not persuaded that the admission of the evidence complained of was either erroneous or prejudicial. We are satisfied that it does not call for a reversal of the judgment. As the Court of Appeals for the Tenth Circuit has said in Campbell v. Clark, 283 F.2d 766, 768, 'the exercise within normal limits of the discretion of the trial court in the admission of such testimony will not ordinarily be disturbed on appeal.' It is apparent that the trial court, in the present case, was of the opinion that the opinion evidence of the plaintiff's expert, based largely upon undisputed facts, while perhaps not strictly necessary, would be helpful to the jury in reaching a sound result. We think that was a permissible conclusion. See 20 Am.Jur. Evidence, § 806; 32 C.J.S. Evidence §§ 520, 549."

We find no error on appellants' point 2.

Appellants' third claimed error is as follows:

### "III.

*"The Trial Court committed reversible and prejudicial error in giving a charge on the doctrine of sudden emergency."*

■ Both Lane and Prokop, the occupants of the appellants' truck unit, were killed in the accident. Appellee Koenig was the only known living eye witness to the collision. His testimony was to the effect that the appellants' truck approached with its four front headlights on high beam; that he first noticed it approximately a mile away; he blinked his lights several times but the operator of the appellants' truck failed to respond by dimming his lights; that the appellants' lights were so bright that he, Koenig, was required to watch the right curb in order to drive. When the two vehicles were "approximately 75 feet" apart, he noticed the two left headlights of the appellants' truck were over to the north of the center line of the pavement.

At that time he could see the center line of the pavement but could not prior thereto because of the bright lights. The left headlights of the appellants' truck were approximately two and a half to three feet over the center line. He turned his steering wheel to the right; his right front wheel went up on the north curb and then the accident occurred. In a deposition taken prior to the trial, Koenig stated that when he saw the appellants' truck two to two and a half feet north of the center line,

"A. I automatically threw myself over in the center and turned the steering wheel as I went."

He was also asked:

"Q. Did you apply your brakes at any time before the accident, either the brakes on the tractor or the trailer?

"A. No.

"Q. Did you sound your horn at any time before the accident?

"A. No.

"Q. At the moment of the impact was your vehicle entirely on the pavement?

"A. The right front wheel was on the curb, but other that (sic) that, yes, it was all on the pavement."

The trial court gave the following instruction:

"Where the operator of a motor vehicle by a sudden emergency not due to his own negligence is placed in a position of imminent danger, and has insufficient time to determine with certainty the best course to pursue, he is not held to the same accuracy of judgment as is required under ordinary circumstances; and if he pursues a course of action to avoid an accident, such as a person of ordinary prudence placed in a like position might choose, he is not guilty of negligence even though he did not adopt the wisest choice. So, if you find that Koenig was suddenly confronted with an emergency not due to his own negligence, you will then consider the foregoing rule and

determine whether under the conditions Koenig used ordinary care."

The following exception was taken to the foregoing emergency charge:

"1. We respectfully except to that portion of the Court's charge to the jury to the effect that if the jury found that Koenig—and limited solely to Koenig—was faced with a sudden emergency not due to his own negligence, my objection being that there is no evidence of any sudden emergency that could be claimed by Koenig, except an emergency that he would have created by his own negligence; and secondly, that although Lane and Prokop were not here to testify, that there are now before the jury such substantial facts as found in the record whereby the jury could find that Lane and Prokop were likewise faced with a sudden emergency not of their making."

It is now argued that the charge (1) was not limited to a particular factual situation and therefore the jury was at liberty to apply it to any part of the appellees' version of the occurrence of the accident; and (2) if it was intended by the trial court to apply only to the events immediately preceding the collision, the facts negate any emergency situation on the part of the appellees.

As to No. 1, we think it perfectly clear that the court had reference to the time immediately preceding the impact when Koenig first was able to see appellants' truck was over the center line and that the jurors so understood and could not possibly have been confused. As to No. 2, appellants by mathematical formula point out that two vehicles approaching each other at approximately 50 miles per hour, each travels 75 feet per second; that only one-half second elapsed before the vehicles collided; that the average reaction time varies from three-fourths of a second to two seconds, therefore "It follows from strictly a mathematical standpoint that it would be impossible for Koenig to take any evasive action whatsoever since there was not sufficient time in which he could react," and that the emergency instruction was therefore erroneous, confusing and misled the jury. We think the exception to the emergency instruction was not well taken and that the jury was properly instructed on the point.

■ In Born v. Osendorf, 8 Cir., 1964, 329 F.2d 669, at 674, we said with regard to mathematical estimates:

"It is generally recognized that a party is not conclusively bound by estimates of speed and distances. The weight of evidence of this type is for the jury. Ferderer v. Northern Pac. Ry. Co., 77 N.D. 169, 42 N. W.2d 216, 225 (1950); Merchants Motor Freight v. Downing, 8 Cir., 227 F.2d 247, 251 (1955); Day v. Frazer, 59 Wash.2d 659, 369 P.2d 859 (1962); McDonough v. St. Louis Public Service Company, Mo., 350 S.W.2d 739, 744 (1961); Lowe v. Athens Marble & Granite Company, 104 Ga.App. 642, 122 S.E.2d 483 (1961); Barb v. Lowe, 196 Va. 1014, 86 S.E.2d 854 (1955); 32 C.J.S. Evidence § 568c, g."

See, also, Partlow v. Goldstein, 8 Cir., 1959, 263 F.2d 169, 172.

Koenig was asked at the time his deposition was taken if he applied his brakes, to which he answered no; and if he sounded his horn, to which he also answered in the negative. There was also dispute as to whether he remained behind the wheel, or, as he stated in his deposition, "threw [himself] over in the center and turned the steering wheel as [he] went." It could have been argued and the jurors could have concluded that Koenig, instead of turning his wheel to the right, should have applied his brakes, sounded his horn or taken some other action. The fact that he did turn his wheels to the right so that his right front wheel was on the curb at the time of the collision indicates clearly that he did have time to take some action, and accordingly we feel that the court's instruction was sound. The trial court here, in ruling on motions for judgment n.o.v. or for new trials, was presented

with the question and handled it as follows at page 854 of 227 F.Supp., after first citing and quoting from Watson Bros. Transportation Co. v. Jacobson, 1959, 168 Neb. 862, 97 N.W.2d 521:

"In the case at bar there was, in the opinion of the court, competent evidence that Koenig, while in the exercise of due care, was confronted with an emergency when the Frank unit suddenly and without warning crossed over on to his side of the highway. The court believes that the jury could properly have considered the doctrine in the event they found it applicable in determining the propriety of Koenig's actions in failing to avoid the Frank unit and in moving to the right of the seat of the truck from behind the steering wheel when he felt the collision was inevitable. The court concluded at the time and remains of the opinion that there was no evidence presented by which the jury could have concluded that Lane or Prokop was confronted with a sudden emergency and made a wrong choice because of the stress of the occasion as found necessary for the submission of the doctrine to the jury in Kraft v. Fundum, 175 Neb. 821, 124 N.W.2d 225."

We find no error in the trial court's instruction.

■■ Appellants' fourth point is:

*"The Trial Court committed prejudicial error in its charge to the jury on appellants' theory of the case concerning the excessive number of hours which the appellee Koenig was permitted to drive prior to the accident."*

The Interstate Commerce Commission regulation prohibits an operator from driving more than ten hours in the aggregate in any period of 24 consecutive hours, while the Nebraska statutes prohibit the driving of more than twelve hours in a consecutive period of 24 hours. After instructing on both the ICC and Nebraska regulations, the court told the jury:

"I charge you that violation of such rules and regulations or statute is not of itself negligence on Koenig's part or of Bruggeman. It is only evidence of negligence, as I have suggested, concerning violations, if any, of the other state statutes dealing with rules of the road. It is also to be noted that the regulation and rule does not make it unlawful for the driver to drive in excess of the maximum hours. It only applies to the carrier, in this case, Bruggeman.

"The mere fact that a driver was violating the ICC rules and regulations or the Nebraska Statute as to the hours driven without taking the prescribed rest period does not render the employer liable if at the time the driver was operating the unit as a reasonable and prudent man would operate it and if in fact in its operation he was not negligent. You will note that no specification of contributory negligence is being submitted to you in the Koenig case for claimed violation of this rule or regulation or statute."

Appellants attack the instruction, first, on the ground that it was error to inform the jury of both the Nebraska statute and the ICC regulations because, being dissimilar, they would tend to confuse; and, second, that it contained a misstatement of the Nebraska law concerning the effect of a statutory violation. We do not agree. If it was error to instruct on both the ICC regulations and the Nebraska statute in the manner in which the trial court did so herein, we do not see how it could possibly have been confusing to the jury and in any event, would be classified as harmless error under Rule 61, Federal Rules of Civil Procedure, 28 U.S.C.A. As to the second objection, we believe the court correctly stated the law. See Hersh v. Miller, 1959, 169 Neb. 517, 99 N.W.2d 878, 881.

In ruling on this alleged error, the trial court stated at page 855 of 227 F. Supp.:

"It is now urged that the court erred in submitting both the I.C.C. regulations and state statutes to the jury, the state provisions being applicable only in the event the jury found the I.C.C. regulations inapplicable. No such exception to the instruction given by the court was taken at the trial, and the court concludes that the instruction was proper."

We are in complete accord.

Appellants' fifth claim of error deals with the wrongful death actions brought in behalf of the heirs of Lane and Prokop. Inasmuch as the appeals in those cases have been dismissed, we need give no consideration to this point.

These cases were fairly tried and no prejudicial error or errors are found.

Affirmed.