220 So.2d 593 (1969)
Sam LYNCH
v.
Joseph Mitchell SUTHOFF.
No. 45162.
Supreme Court of Mississippi.
February 24, 1969.
Rehearing Denied April 7, 1969.
*594 Watkins & Eager, Elizabeth Hulen, James A. Becker, Jr., Jackson, for appellant.
Poole & Marks, Riddick & Nobles, Jackson, for appellee.
INZER, Justice:
This is an appeal by Sam Lynch from a judgment of the Circuit Court of the First Judicial District of Hinds County awarding appellee, Joseph Mitchell Suthoff, $62,500 as damages for personal injuries growing out of a collision between an automobile operated by Lynch and a motorcycle operated by Suthoff. We affirm.
The collision occurred about 7 p.m. on November 22, 1966, in the City of Jackson at the intersection of Voorhees Street and Robinson Road. Robinson Road at this point is a four lane street and runs in an east-west direction. Voorhees Street is an unmarked, two lane, residential street running north-south which dead ends into Robinson. At this point Robinson is well lighted and is a major traffic artery of the City of Jackson. Appellant was returning to his home from a trip to a local grocery store. His home is located on Voorhees Street and in order to reach it he had to make a left turn off Robinson onto Voorhees. As appellant approached the intersection he was traveling about 15 miles per hour in the inside or southern lane for traffic going west on Robinson. Appellee on his motorcycle was approaching the intersection from the west. Appellant testified that as he approached the intersection he gave a left turn signal with his light and slowed to about 8 miles per hour. He said he saw an automobile approaching the intersection from the west at a distance of about 75 to 100 feet, but continued to make the left turn without stopping. He testified that he did not see the motorcycle at that time and never did see it until the instant of the collision. He did not say that he continued to look for traffic approaching from the west as he made his left turn which was to take him across two lanes of oncoming traffic. When asked if he began his left turn before reaching the center of the intersection he was unwilling to say that he definitely did not cut the corner because he did not know. However, he did finally say that he did not think he turned illegally because he usually turned at the center of the intersection. He admitted the collision occurred in the south lane for east bound traffic on Robinson and that the collision was nearly head-on.
Appellee testified that he was returning home after a visit to his mother's. He said he was sure that the lights were burning on his motorcycle. Before reaching the intersection he overtook a car that was traveling in the inside or north lane of the east-bound traffic on Robinson. He passed this car in the south lane next to the curb and continued towards the intersection. The car he passed was driven by the witness Dean and was evidently the car the appellant testified he saw approaching before he made his left turn. Appellee testified that he was traveling at a speed of between 35 and 40 miles per hour as he approached the intersection. He was looking ahead and did not see appellant's automobile until it loomed up in front of him in his lane of traffic. He did not remember anything else that happened until he regained consciousness in the hospital sometime later. Appellee *595 suffered severe, painful and permanent injuries as a result of the accident.
There were no other eye witnesses to the accident. Dean testified that he was talking with a passenger and that they were not paying attention and could not testify as to how the accident happened. He did testify that appellee was exceeding the speed limit of 30 miles per hour when he passed his car.
The accident was investigated by Officer R.C. Wells of the Jackson Police Department. Wells had several years experience as a police officer and had been attached with the accident investigation division for about a year. He estimated that he had investigated over a thousand accidents. He arrived at the scene of the accident about 20 minutes after the collision. He found appellant's automobile resting next to the curb headed south on the wrong side of Voorhees Street. Appellee was found severely injured on the southeast corner of the intersection. The motorcycle was just to the east of the center of Voorhees and just south of the curb line of Robinson if extended across the intersection. The officer positioned these findings on a map that was placed in evidence. This testimony is not complained of on appeal. However, the trial judge allowed the patrolman not only to testify as to the debris found but also allowed him, over the objection of the appellant, to fix the point of impact, and to depict this point on the map by drawing and outline of the automobile showing its assumed direction. The following illustrates the finding of the trial judge on this point.
Q. All right. Were you able from your investigation to determine what the point of impact was?
BY MR. BECKER.
Your Honor, I object to that.
BY THE COURT.
If he was able to determine it by debris and other things, he may describe how he determined it, and if he meets the qualifications he may testify.
A. May I refer to my notes that I taken at the time of the accident and later on?
BY MR. POOLE (continuing)
Q. Yes, refer to your notes and tell us what if any debris or other material you were able to find so as to determine the exact point of impact.
BY MR. BECKER.
Your Honor, I object to counsel leading, and I think the rule is the witness may testify as to what he found, but as to his conclusions, he's not a trained accidentologist to determine an exact point of impact.
BY THE COURT.
He may testify as to what he found. I don't think the question was leading. That's what he was asked. If he meets the qualifications it would be competent. I will permit him to tell what he found, how it was positioned, and other things.
The principal assignment of error argued on this appeal is the trial court's admission into evidence of the opinion of the city patrolman as to the point of impact and the admission of the map depicting the assumption of the patrolman as to the directional position of the automobile at the time of the impact. This action on the part of the trial court was error. Jones v. Welford, 215 So.2d 240 (Miss. 1968); Hagan Storm Fence Co. of Mississippi v. Edwards, 245 Miss. 487, 148 So.2d 693 (1963); Schumpert v. Watson, 241 Miss. 199, 129 So.2d 627 (1961); and Carruth v. Griffis, 220 Miss. 541, 71 So.2d 478 (1954). All Justices are in agreement that this action on the part of the trial court was error, but there is disagreement among us as to the effect of the admission of this evidence. All Justices except Justice Rodgers are of the opinion that the admission of this evidence was harmless error. Chief Justice Ethridge *596 and Justices Jones, Brady, Patterson and Smith are of the opinion that the admission of this evidence was harmless in this case because the negligence of appellant was clearly established by other evidence. Appellee charged in his declaration that appellant was guilty of negligence in attempting to make a left turn before reaching the center of the intersection and negligently cutting the corner in violation of Section 8189(b), Mississippi Code 1942 Annotated (1956) and Section 92(b) of the ordinances of the City of Jackson, in failing to yield the right of way to appellee in making a left turn without first making sure that he could do so in reasonable safety, in turning his car to the left into the path of the appellee's vehicle which was approaching from the opposite direction, and in failing to keep a proper lookout for traffic traveling east on Robinson Street. The aforementioned justices are of the opinion that the photograph of appellant's car taken after the accident shows that the motorcycle struck the front bumper of the car to the left of the center of the automobile and clearly indicates that the collision was nearly head-on. This evidence along with the admissions of the appellant that the collision occurred in the south lane of the east bound traffic on Robinson Street and that his vehicle was traveling in a southwesterly direction at the time of the collision clearly established that he made his left turn before reaching the center of the intersection. Furthermore, his own testimony indicates he was negligent in making a left turn without first making sure that he could do so in safety and failing to keep a proper lookout for traffic approaching the intersection from the west. Appellant says that he looked and saw the Dean car at a distance of 75 to 100 feet away. He does not say that he continued to keep a lookout and it is clear that he did not do so insofar as he admits he never saw the motorcycle until the instant of the collision. This was a well lighted intersection and had appellant been keeping a proper lookout he would have certainly seen the motorcycle approaching the intersection. Under these circumstances the aforementioned Justices are of the opinion that the appellee was entitled to a peremptory instruction on the negligence of the appellant. Therefore, for this reason, the admission of the opinion evidence of the patrolman was harmless.
Presiding Justice Gillespie, Justice Robertson and this writer are not necessarily in disagreement with the opinion of the aforementioned Justices, but we are of the opinion that this is a typical case for the application of the harmless error rule and that the application of this rule makes it unnecessary to reach the question of whether the appellant was guilty of negligence as a matter of law. Certainly this is a case where, in our opinion, it is apparent that the judgment of the trial court did not result in a miscarriage of justice and under Mississippi Supreme Court Rule 11 we will not reverse for the improper admission of evidence or misdirection of the jury. See Marsh v. Johnson, 209 So.2d 906 (Miss. 1968) and the cases cited therein.
Justice Rodgers is of the opinion that the admission of this evidence under the circumstances of this case allowed the officer to invade the province of the jury and in effect decide the case for them and that the admission of such testimony constitutes reversible error. It is his opinion that Jones v. Welford, supra, is applicable here, and he would reverse and remand this case for another trial.
It is appropriate for us to point out for the benefit of the bench and bar that while a patrolman or police officer, not an eye-witness to an accident, who investigates an accident shortly after it happens may properly testify as to the matters and things that he finds at the scene, he cannot be allowed to invade the province of the jury by giving his opinion as to how the accident happened. In the case before us it was proper for the officer to testify as to the location of the vehicles, the location of appellee, and the location of all debris created by the collision. It was also proper for him to mark the location of these *597 things on the map of the intersection. It was improper, however, for him to give his opinion as to the point of impact and to depict this point on the map by drawing an outline of an automobile showing its direction. While we hold that the error here is harmless, this is not to be taken that we will so hold in every case where such error is committed. Care should be taken by the trial judge to see that the investigating officer is not allowed to invade the province of the jury by giving opinion evidence over the objection of the opposite party.
Appellant complains of certain instructions granted appellee and one instruction which he requested and was refused by the trial court. The instruction refused instructed the jury that plaintiff was guilty of negligence in operating his motorcycle at a speed in excess of thirty miles per hour immediately prior to the accident and if the jury believed from the evidence that such negligence on the part of the plaintiff was the sole cause of the accident, then the jury should find for the defendant. While this instruction should have been given, the failure to give it in this instance was not reversible error. Appellant was granted an instruction which told the jury that if plaintiff was operating his motorcycle in excess of thirty miles per hour immediately prior to the accident then he was guilty of negligence and if the jury found that such negligence was the sole proximate cause of the accident and the resulting injuries then it was their sworn duty to find for the defendant. Appellee in his testimony admitted that he was going in excess of thirty miles per hour and there was no controversy about this fact. Appellee's counsel, moreover, in his argument to the jury, which is a part of the record, told the jury that appellee was guilty of negligence and was speeding. Under these circumstances we are unable to see how the appellant was prejudiced by the failure of the court to grant the requested instruction. We have carefully examined the numerous instructions on behalf of both parties and we are of the opinion that when read together they correctly instructed the jury as to the law governing the issues involved in this case.
There are other assignments of error but there is only one which we think merits any discussion. That assignment of error is that the verdict of the jury is grossly excessive in view of the admitted negligence of the appellee and that evidently the jury failed to respond to the instruction on contributory negligence. Appellant admits that appellee suffered severe, painful and permanent injuries as a result of the accident. In fact he states he would not raise the question of excessive damages except for the issue of contributory negligence. We will not attempt to detail all the evidence relative to the pain and suffering that appellee experienced as a result of this accident, but will only outline such evidence as we deem necessary to give some light on the nature and extent of appellee's injuries. Dr. Charles Wright, a general practitioner, saw the appellant about one hour after the accident and found him to be in a state of shock. He said that there were lacerations on the right hand and right foot, a compound comminuted fracture of the left femur, a comminuted fracture of the right femur, a possible concussion from a blow on his head, and a chest injury. Appellee was first given fluid and blood and then carried to surgery where the lacerations were repaired and the fractures cleaned. Dr. Buford Yerger, Jr., an orthopedic surgeon, was called in to take care of the fractures. Appellee's injuries were such that it was necessary to remove a small part of the protruding bone and after the fractures were set it was necessary to put pins in each leg to hold the bones in place. Appellant was placed in traction, flat of his back, where he remained until it was apparent that the left thigh bone was not going to heal. On March 14, 1967, another operation was performed. Dr. Yerger removed a piece of bone from the pelvic bone of appellee in order to provide fresh *598 bone to stimulate the healing of the bones in his left thigh. The bone was chiseled from the pelvic bone and laid alongside the broken bone and attached by a nail. This nail was still in the thigh at the time of the trial and it will be necessary for appellee to have another operation to remove this nail from his leg. Dr. Yerger estimated appellee's permanent disability to be thirty percent of the lower extremities.
Appellee was 19 years of age at the time of his injury. He had been married about three weeks. He was employed as a truck driver with take home pay of about $50 per week. He remained in the hospital for five and one-half months and during part of this period it was necessary for him to be attended by special nurses around the clock. During most of this time he was in traction, flat of his back. He developed bed sores and his mental condition became such that he had to be treated by a psychiatrist. After he was released from the hospital he was unable to do anything for himself and was flat of his back at home for about four months. He was then in a wheel chair for about a month and a half. Since that time he has been using walkers and crutches. At the time of the trial he was commuting by bus to Hinds Junior College, where he is taking vocational training. He is unable to get on and off the bus by himself and has to depend upon the goodness of the other students on the bus to assist him on and off and they reserve the front seat for him.
At the time of the trial he had incurred medical expense in excess of $11,000 and will have additional medical expense. His loss of wages at the time of the trial amounted to $3,120; he has suffered extreme pain for a long period of time and will have to undergo another operation; there are other elements of damage not necessary here to detail.
The nature and extent of the injuries in this case are such that we cannot say that the jury failed to reduce the damages because of the contributory negligence on the part of the appellee. Neither can we say that the amount fixed is excessive. The testimony in this case as to the nature and extent of the injuries is such that in the absence of contributory negligence, a larger verdict would be justified.
For the reasons stated this case is affirmed.
Affirmed.
All Justices concur, except RODGERS, J., who dissents.