465 So.2d 311 (1985)
Luther Ray HOLLINGSWORTH, on Behalf of Himself & Heirs of Rita Sue Hollingsworth
v.
BOVAIRD SUPPLY CO.
No. 55154.
Supreme Court of Mississippi.
February 27, 1985.
*312 Stanford Young, David Slaughter, Waynesboro, for appellant.
C. Denton Gibbes, Gibbes, Graves, Mullins, Bullock & Ferris, Laurel, for appellee.
EN BANC.
DAN M. LEE, Justice, for the Court:
This is an appeal by Luther Ray Hollingsworth from a jury verdict in the Circuit Court of Wayne County in favor of the defendant/appellee, Bovaird Supply Co. This matter arises from a rural traffic accident in which Hollingsworth's wife was killed when her car struck a pickup truck driven by Anthony Frasier while in the scope of his employment for Boviard Supply Co. On this appeal we are again asked *313 to address the admissibility of an accident reconstruction expert. By today's decision we are announcing that Mississippi jurisprudence recognizes the significant advancement of scientific study in this field and the admissibility of such an expert's testimony.

THE FACTS
On December 22, 1979, at approximately 11:35 a.m., a collision occurred on Old Highway 84 in Wayne County between Rita Hollingsworth and Anthony Frasier. The evidence showed that the pickup truck driven by Anthony Frasier, in which his wife was a passenger, was headed west on Highway 84 and a 1977 Mercury driven by Mrs. Hollingsworth was traveling east.
Frasier testified that when he first spotted the Mercury it was approximately 150 paces away. In his opinion the Mercury traveled 90 paces to the point of impact and his pickup truck traveled 60 paces to arrive at the point of impact. Mr. Frasier did not see the Mercury earlier because his vision was obscured by a curve in the road.
According to Frasier, the Mercury began to cross the imaginary center line of the highway (there was no actual painted center line on Highway 84) and as it got close to the pickup truck, the Mercury swerved and came at the truck sideways, with its left side toward the pickup truck. Mr. Frasier testified that when he saw the Mercury crossing the center of the pavement he slowed and turned to his right in order to avoid the collision. He stated that he was traveling 30 miles per hour when he saw the Mercury but he had slowed to a virtual stop by the time the impact occurred. Mrs. Frasier corroborated her husband's version of the accident. Because Mrs. Hollingsworth was killed in the accident, the Frasiers were the only eyewitnesses to the collision.
At impact both vehicles spun counterclockwise and the pickup truck came to a stop at or near the point of impact. Damage to the Mercury was to its left side from the driver's door to the rear of the car. Damage to the pickup truck was to its left front area.
Constable Lamar West was one of the first to arrive on the scene. He testified that he saw a scrape mark on the highway that looked like the pickup truck's tire had blown out and the wheel rim had gouged the pavement. The mark extended outward from the left front wheel rim of the pickup truck which had come to rest on the south half of the road. The proper half of the road for the Mercury traveling east was the south half. The Constable also stated that he saw debris on the south half of the road but none on the north half.
Sheriff Marvin Ferrior investigated the accident. He testified that he did not see gouge marks on the blacktop. All evidence indicated that it had been raining at the time of the accident.
Luther Hollingsworth, Mrs. Hollingsworth's husband, testified that he visited the scene at about 3:00 p.m. the day of the accident. He stated that he observed a gouge mark in the pavement from a little bit south of the center of the road up to the left front wheel of the pickup truck.
At trial, Hollingsworth's attorney attempted to offer the testimony of Albert Medina, a traffic accident consultant. The record established that Mr. Medina is highly educated and experienced in traffic accident reconstruction both from theoretical and practical training. Among Mr. Medina's qualifications are the rank of instructor at the Traffic Institute, Northwestern University, vast experience in police department investigating and reconstructing traffic accidents, experience gained at the Ford, General Motors and Chrysler Proving Grounds, and in teaching traffic accident reconstruction in approximately thirty-five states. Mr. Medina has also graduated courses in mathematics and vehicle dynamics, fields of study essential to the understanding of the reaction of vehicles when eccentric force is applied to them.
The circuit court sustained objections to questions intended to lay the foundation for Mr. Medina's status as an expert witness. On proffer, Mr. Medina testified that *314 based on his education, experience and investigation, the point of impact was on the south side of Highway 84. This was the proper portion of the road for Mrs. Hollingsworth's eastbound Mercury.
Mr. Medina stated that if he assumed Mr. Frasier's testimony as true, that is, the pickup truck was almost stopped at the north edge of the road and darted northward to avoid the collision, there would have been no way the vehicles could have come to rest the way they did. According to Mr. Medina, if Mr. Frasier's description was accurate, the pickup truck would have come to rest off the road on the north side.
Without the benefit of Mr. Medina's testimony the jury returned a verdict for the defense. It is from that verdict that Mr. Hollingsworth brings this appeal.

THE LAW
The law must be both a stable and a dynamic thing. It must be stable so that we, as citizens, are able to understand it, to stay within its confines and to predict its reaction. Stability contributes respect for the law and the notion that all who come under it are treated equally. Stability in the pronouncement of legal doctrine must be as reliable as the surf which pounds against a rocky coast. Nevertheless, just as the surf will eventually redefine that rocky coast, the law cannot remain unchanged against waves of reason and progress. As stability brings respect for the law, even more so does reason. Reason cannot be a static thing for the waters of progress erode yesterday's context and shape tomorrow's reality.
Prior to today's decision, this Court has stood firmly behind the rule which prohibits an accident reconstruction expert from giving his opinion on how an accident happened, the point of impact, the angle of travel, the responsibility of the parties involved or the interpretation of photographs. Arrow Food Distributors, Inc. v. Love, 361 So.2d 324 (Miss. 1978); Lynch v. Suthoff, 220 So.2d 593 (Miss. 1969); Jones v. Welford, 215 So.2d 240 (Miss. 1968); Marsh v. Johnson, 209 So.2d 906 (Miss. 1968); Hollifield v. Nester Chevrolet Co., 207 So.2d 636 (Miss. 1968); Schumpert v. Watson, 241 Miss. 199, 129 So.2d 627 (1961); Delta Chevrolet Company v. Waid, 211 Miss. 256, 51 So.2d 443 (1951); Standard Oil Company v. Crain, 199 Miss. 69, 23 So.2d 297 (1945); Columbus and Greenville Railway Co. v. Robinson, 189 Miss. 675, 198 So. 749 (1940).
In Hagan Storm Fence Co. v. Edwards, 245 Miss. 487, 148 So.2d 693 (1963), there was a two-car intersection collision in which drivers of both cars suffered amnesia and could not recall anything about how the accident occurred. The plaintiff called an automotive engineer to testify as an expert in accident reconstruction. The expert placed responsibility for the accident on the car driven by the fence company employee. He based his testimony on the position and angle of the automobiles related to him by others and from post accident photographs. In a five to four decision, this Court held that the admission of the expert's testimony amounted to "an invasion of the province of the jury" and reversed the case.
From our study of the rationale of the Hagan decision and the state of the art of the science of accident reconstruction we are of the opinion that Hagan and its progeny must be overruled. We agree with the Hagan opinion insofar as it asserts that the function of the jury as finders of fact must not be usurped; however, we disagree that allowing an expert accident reconstructionist to testify as to the post impact reaction of vehicles is such an usurpation. An expert's qualifications and the basis of his conclusions are open to cross-examination. The jury, as is their province, may reject the expert's testimony just as they might any other witness. See note, Expert Testimony May Invade Province of the Jury, 35 Miss.Law Journal, 312. (March, 1964) and 1 Lacy, Scientific Automobile Accident Reconstruction, pp. 1-4 (1981). Furthermore, like any other witness offered as an expert, the trial judge is called upon to exercise his sound discretion in determining whether the witness is legitimately qualified as an expert in the applicable *315 fields of scientific knowledge. See Pharr v. Anderson, 436 So.2d 1357, 1359 (Miss. 1983). In addition, it has become a matter of routine to permit expert witnesses in scores of different types of cases. See Cain v. Mid-South Pump Co. 458 So.2d 1048 (Miss. 1984) (expert on digging water wells); Stubblefield v. Jesco, 464 So.2d 47 (Miss. 1984) (grain mill explosion); Thompson v. State, 457 So.2d 953 (Miss. 1984) (handwriting); Enlargement of Yazoo City v. Yazoo City, 452 So.2d 837 (Miss. 1984) (municipal annexation); Williams v. State, 445 So.2d 798 (Miss. 1984) (ballistics); Mississippi Public Service Commission v. Mississippi Power Company, 429 So.2d 883 (Miss. 1983) (public utility rate increase); Schoppe v. Allied Chemicals Division, etc., 418 So.2d 833 (Miss. 1982) (agricultural damage); Edwards v. Harper, 354 So.2d 256 (Miss. 1978) (property appraisal); Early-Gary, Inc. v. Walters, 294 So.2d 181 (Miss. 1974) (ceramic engineering); Chapman v. Carlson, 240 So.2d 263 (Miss. 1970) (medical malpractice).
In the years following the Hagan decision, a majority of American jurisdictions now permit the use of expert accident reconstruction opinion. See cases annotated in 9C Blanchfield Cyclopedia of Automobile Practice, § 6316 (Supp. 1964), at 122-124; e.g. Waldron v. Raccio, 166 Conn. 608, 353 A.2d 770 (1974); Moyer v. Clark, 75 Wash.2d 800, 454 P.2d 374 (1969); Parker v. Hohman, 250 A.2d 698 (Me. 1969); State v. Stoddard, 147 Mont. 402, 412 P.2d 827 (1966); Franks Plastering Co. v. Koenig, 341 F.2d 257 (8th Cir.1965), interpreting Nebraska law; Dudek v. Popp, 373 Mich. 300, 129 N.W.2d 393 (1964); Mayeaux v. American Mutual Liberty Insurance Corp., 409 F.2d 508 (5th Cir.1969), interpreting Louisiana law.
Furthermore, in a concurring opinion in Hagan, Justice Gillespie acknowledged that "When the time comes that such expert can demonstrate that he can reliably deduce the relative speed of two vehicles to a differential of five miles an hour, the angle of the vehicles at impact, and what diverted their courses, then such testimony ought to be admitted." 245 Miss. at 495, 148 So.2d at 701.
In a dissenting opinion Justice Jones had this to say about the rule of law announced in Hagan:
The majority opinion suggests that it would invade the province of the jury to admit expert testimony in automobile cases. But this reasoning begs the question, because there are many instances where expert opinion has been permitted to aid the jury. This would include medical questions of causation, the testimony of handwriting experts, ballistics experts, property appraisers. Nor will such evidence necessarily turn into a clash of partisan experts. The automotive engineer is not subject to the same partisan pressures to which an attending physician may be subject. Moreover, the ability to apply the laws of motion is distinctly much more of an exact science than the art of expressing an opinion on a question of medical causation. In the search for truth, the court should permit the use of adequately qualified experts in any area where scientific evaluation would be of assistance to the jury. Yet, unfortunately, the controlling opinion rejects the testimony of an experienced, qualified automobile engineer where there are no available eye witnesses.
245 Miss. at 504, 505, 148 So.2d at 700.
Although we are overruling the Hagan decision and its progeny, today's decision should not be viewed as a complete departure from this Court's judicial philosophy. The rule we are announcing today does no more than put automobile collision litigants on equal footing with nearly all of the other litigants availing themselves of our state court system. As previously stated the jury remains the ultimate finder of fact, the only difference is that now a properly qualified and examined expert witness may provide them with testimony which is potentially helpful in deciding those issues of ultimate fact.
Therefore, we hereby reverse and remand this cause to the Circuit Court of *316 Wayne County for proceedings consistent with this opinion.
REVERSED AND REMANDED.
PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, J., dissent.
PATTERSON, Chief Justice, dissenting:
This dissent is written because I believe we are reversing a case, which should be affirmed, in order to adopt a new rule of evidence. An explanation of my views is perhaps appropriate.
It is, of course, elementary that the plaintiff has the burden of proof to establish his case, and if he fails to do so by a preponderance of the evidence, the defendant is entitled to judgment.
Lamentedly, Mrs. Hollingsworth, plaintiff's decedent, was fatally injured in the accident leaving the plaintiff with no eyewitnesses to the collision. But this unfortunate circumstance does not, in my opinion, diminish the plaintiff's burden of proof, although the proof necessary to establish the plaintiff's cause undoubtedly became difficult.
With no eyewitnesses favorable to their theory of the case on liability, the plaintiff called Anthony Frasier, the driver of the Bovaird pickup truck, as an adverse witness. Through his testimony the plaintiff elicited a statement concerning his version of the collision. In brief Frasier testified that he first observed Mrs. Hollingsworth's (decedent's) automobile when it was approximately 150 paces away. The Mercury automobile traveled 90 paces to the point of impact and the truck Frasier was driving traveled 60 paces to the point of impact. The decedent's automobile crossed the center of the highway [there was no painted centerline], swerved, and skidded toward the truck in a sideways position. When Frasier saw the oncoming automobile cross the center of the pavement and skid broadside toward his vehicle, he braked and turned to the right. Despite his efforts, the collision occurred. After impact, according to Frasier, both vehicles spun counterclockwise with the truck stopping near the point of impact and the Mercury off the highway.
Constable West, witness for the plaintiff, testified he saw a scrape mark on the highway indicating to him the truck's left front tire had blown out and the rim had "gouged" the pavement. The mark he observed was slightly left of the center of the road. It need be noted that West made a similar statement in an affidavit which was relied upon by Medina, the expert, in formulating his opinion which will receive later comment. In this connection we also observe that West gave a written statement to an investigator for the defendant indicating he was quite positive there was no such "scrape" or "gouge" mark on the pavement.
The decedent's husband, Luther Hollingsworth, testified that he visited the scene of the collision on the afternoon of the day it occurred but the vehicles had been removed. He observed a gouge mark in the pavement a little south of the center of the road, but conceded on cross-examination that he did not know what caused the mark because the vehicles had been removed.
The testimony outlined above is the entirety of the evidence to establish the plaintiff's theory of liability which was submitted to the jury.
However, the plaintiff next offered Albert Medina, who was qualified as a traffic accident consultant. After an objection was interposed to the expert's testimony, the jury was retired and proffer was made through a series of questions and answers. After being qualified Medina stated his opinion based upon the premises set forth in the affidavit of West, the deposition of Anthony Frasier (quite similar to Frasier's testimony outlined above), the photographs of the damaged vehicles depicting one off of the road and one remaining on the road, and his "own" observation of the accident *317 scene. He was then asked by plaintiff's counsel:
Q. Now, based upon all your training, experience and examination of all the items that I told you a while ago, I'll ask you to assume that the pickup truck was almost stopped with its wheels almost off or on the north side of the highway and that the Mercury automobile came sliding into the front of it, from your training and experience and all the evidence that you've viewed and everything, would  do you have an opinion whether or not the pickup truck would have wound up where it did on the south side of the road, if those were the facts?
A. Yes, sir. I have an opinion on it.
Q. What is that opinion?
A. That it would not have occurred in that fashion if the pickup truck were almost stopped on the right hand side of the road.
In his argument for the introduction of the expert's opinion testimony, the plaintiff's attorney assured the court that the ultimate question, the location of the point of impact, would not be asked. Nevertheless, this was done through the following question:
Q. Do you have an opinion based upon your examination of all these items that I said, pictures and so forth, as to where the impact occurred either on the south side of the road or the north side of the road?
A. Yes, sir. I have an opinion.
Q. What is that opinion?
A. It's my opinion that the impact between the pickup truck and the Mercury occurred on the south side of an imaginary centerline of that roadway.
From these questions and the responses to them it becomes apparent, at least to this writer, that the purpose of Medina's opinion was to impeach the testimony of Anthony Frasier which was given when he was called as an adverse witness. The expert's opinion, which we are now urged to permit the jury to consider, did not lend itself as substantive evidence to establish the plaintiff's burden of proof. The expert's testimony as presented in the proffer went only to the impeachment of Anthony Frasier's testimony or to question the witness's veracity. As long ago as 1898 in Bacot v. Hazelhurst Lumber Co., 23 So. 481 (Miss. 1898), it was held that evidence which merely impeaches the testimony of another witness may be competent for that purpose but is not competent to prove the facts of the matters asserted. This principle has been reannounced, albeit in criminal cases, in Moffett v. State, 456 So.2d 714 (Miss. 1984), Booker v. State, 326 So.2d 791 (Miss. 1976), and Hill v. State, 118 Miss. 170, 79 So. 98 (1918).
I therefore am of the opinion that the trial court properly excluded the testimony of the expert. If permitted to have been introduced it would have been futile, it seems to me, because the testimony did not have the propensity to affirmatively establish the plaintiff's case by a preponderance of the evidence, although in a negative fashion it may have diminished Frasiers' credibility.
As mentioned the proffer was not admitted into evidence, whereupon the plaintiff rested his case. The defendant's witnesses were Anthony Frasier, his wife, Joyce Frasier, and Sheriff Marvin Ferrior. The Frasiers testified they first observed the oncoming automobile as it came around a curve and over a slight rise. For some reason unknown to them, the automobile veered to the right and approached them "sideways." Anthony, the driver of the truck, turned to the right and slowed down in an attempt to avoid the collision but was unable to do so. Both were positive, although there was no painted centerline on the road, that their vehicle was in its proper lane of traffic when the collision occurred. Sheriff Ferrior stated that he arrived at the accident scene shortly after the collision and that he did not find any "gouge" marks on the highway or the surrounding area.
The testimony of the plaintiff's witnesses, not including the opinion evidence of the expert, and the testimony of the defendant's witnesses was submitted to the jury *318 for their resolution. From the verdict for the defendant and the judgment thereon I reason the defendant has gained through our judicial system a right of some value which he should not be deprived by reversal unless for good and sound cause.
We are, however, through the majority opinion, abandoning former precedent, reversing the jury's verdict, and adopting a rule of evidence to permit the reconstruction of an accident through expert opinion although there was direct testimony of eyewitnesses as to the occurrence. It is here that I think the majority lost its direction while enthralled with the mystic changes wrought by nature upon seashores and overlooked the vast difference between natural and judicial change. As mentioned the plaintiff had no direct witness to the collision, and since this is so it seems reasonable the jury would accept, as they did, the testimony of Mr. and Mrs. Frasier, who saw the unfolding events leading to the fatal collision. At best an expert's opinion is formulated from the premises presented to the witness and ordinarily does not rise to the level of direct evidence as related by an eyewitness. Illinois Cent. R. Co. v. Emerson, 91 Miss. 230, 44 So. 928 (1907); Pennsylvania R. Co. v. Chamberlain, 288 U.S. 333, 53 S.Ct. 391, 77 L.Ed. 819 (1933); Planters Manuf. Co. v. Protection Mutual Ins. Co., 244 F. Supp. 721 (N.D.Miss. 1965).
I therefore conclude that the opinion evidence offered in this case was properly rejected by the trial court because it was impeaching only and added nothing to the plaintiff's substantive case. Additionally, the negative inference arising from the expert's testimony necessarily gives way to the direct evidence of Anthony Frasier when called as an adverse witness. For either of these two reasons I would affirm.
Returning briefly to the reason for this dissent, i.e., we are reversing a case which should be affirmed in order to adopt a new rule of evidence. Hopefully the comments above have illustrated there is no legal reason to overrule. Arrow Food Distributors v. Love, 361 So.2d 324 (Miss. 1978); Lynch v. Suthoff, 220 So.2d 593 (Miss. 1969); Jones v. Welford, 215 So.2d 240 (Miss. 1968); Marsh v. Johnson, 209 So.2d 906 (Miss. 1968); and Hagan Storm Fence Co. v. Edwards, 245 Miss. 487, 148 So.2d 693 (1963). Indeed the appellant does not argue the trial court erred in following the prior decisions of this Court on the subject, but nevertheless appeals with the hope that we will reconsider and adopt a new evidentiary rule.
I am of the opinion we should not do so because the character of expert testimony here requested differs from expert opinions necessary to explain complex and scientific matters or subjects to a lay jury. It also overlooks the value of direct evidence and will inevitably lead to an expensive race for experts to reconstruct automobile accidents. I believe it logical to state that the procurement of an expert by one litigant to a suit invariably leads to a procurement of a counter expert by the opposing litigant, all at greater expense to the litigants and the great danger that direct evidence, understood by lay jurors, will become submerged in the process.
This case should be affirmed.
WALKER and ROY NOBLE LEE, P.J., and HAWKINS, J., join this dissent.