523 So.2d 55 (1988)
Charlene L. MILLER, BY her next friend, Gail MILLER, Thomas J. Miller, Glen Miller and Tommy Jean Eckert[1]
v.
STIGLET, INC.
No. 57374.
Supreme Court of Mississippi.
March 16, 1988.
*56 W. Harvey Barton, John L. Hunter, Cumbest, Cumbest & Hunter, Louis Fondren, Pascagoula, for appellants.
James H. Heidelberg, Bryant, Stennis & Colingo, Pascagoula, for appellee.
Before ROY NOBLE LEE, C.J., and PRATHER and ZUCCARO, JJ.
PRATHER, Justice, for the court:
This appeal addresses the propriety of accident reconstruction testimony from police officers and to what extent an expert in accident reconstruction may give his opinion. The appeal is from a jury verdict in the Circuit Court of Jackson County in favor of the defendant, Stiglet, Inc., on the claims of the plaintiffs for personal injury and wrongful death. Suit was filed on February 16, 1984, and trial was held before the new Mississippi Rules of Evidence went into effect. On appeal, the following has been assigned as error:
(1) The trial court erred in allowing officers Mike Byrd and Bill Dillion to testify and give improper prejudicial opinion testimony as to the cause of the plaintiffs' accident, over plaintiffs' objection, entitling plaintiffs to a new trial.
(2) The trial court erred in allowing, over the objection of counsel for the plaintiffs, jury instruction DS-11 to be submitted to the jury regarding driving within the specified speed limits.

I.
On February 16, 1984, Charlene L. Miller and others filed a complaint alleging, inter alia, that Stiglet, Inc. had a contract with the Mississippi State Highway Department for the purpose of sandblasting and painting the Escatawpa River bridge; that the work was discontinued on April 20, 1979; that on the morning of April 23, 1979, Miller, her two minor children and a neighbor's child, were riding in her car crossing the bridge in a safe and reasonable manner; that suddenly and without warning the car hit sand or paint left by Stiglet, which as a result of rain, caused the road surface to be extremely slick; and that Stiglet, was negligent in failing to properly clean off the bridge or in failing to inspect or give warning to the traveling public, thereby causing personal, physical and emotional injury to Miller and the death of all the children.
*57 Miller testified that she left home about 7:00 a.m. o'clock, to take the children to school and stopped to get gas. Coming to the bridge, she noticed a bad place in the road and paint all over the bridge. Approaching the bridge at 20 miles per hour, her car started skidding from side to side, ultimately plunging into the river through a narrow opening in side of the bridge just large enough for a car to enter. She further stated that her car did not start sliding until she hit the bad paint place and the greasy place on the bridge.
On cross-examination, Miller's deposition was introduced, wherein she twice stated that she was going about 15 miles per hour as she approached the bridge, but the deposition twice contains the handwritten addition "or not over 30 mph," with Miller's initials. She also stated on deposition that she went into a big skid as soon as she hit a big bump or hump at the beginning of the bridge.
Records of the State Highway Department were admitted into evidence, showing that all operations of Stiglet were ceased on Friday, April 20, 1979, while the accident did not occur until three days later.
The plaintiffs then called Mike Byrd as an adverse witness. At the time of the accident, he was a patrolman in the traffic division and had been so for approximately one year. He and another officer were the first to arrive on the scene, he rescued an unconscious Charlene Miller from her car in the river, and they revived her. He observed sand on the bridge, thicker in some places than in others, with an inch deep rut in the sand on one side of the bridge. He also found "yaw" marks at the north end of the bridge that indicated skidding of a tire before the hump where the asphalt and concrete come together.
On cross-examination, Byrd stated that a yaw mark is made by a tire spinning not forward, but in a sliding motion from side to side. The yaw mark that he observed was located before the car arrived at the superstructure or the steel portion of the bridge. He observed no paint on the bridge and no sand near the first hump.
As to his qualifications as an accidentologist, Byrd further testified that he has attended special schools concerning accident reconstruction and accident investigation, including the Northwestern Traffic Institute Accident Investigation School, from which he received a certificate of graduation. He had fourteen years experience as a police officer, during twelve of which he had worked accidents, investigating between four hundred and six hundred accidents. Initially, the trial court sustained the objection to Byrd testifying as an expert in accident reconstruction. After extensive argument on the point outside the presence of the jury, the trial court permitted Byrd to give expert opinion testimony, based on Hollingsworth v. Bovaird Supply Co., 465 So.2d 311 (Miss. 1985). The court found that Byrd's training and years of experience qualified him to give his expert opinion in this case. Afterwards, on voir dire examination, Byrd stated that he did not make any measurements of skid marks or any other measurements at the accident scene.
The cross-examination then continued, with Byrd stating, "After looking at the road conditions, the weather conditions, and the equipment on the car, it was determined to me that the cause of the accident was the rain, the slick tires on the car, and speed." He observed there was just wet pavement, but no paint or sand between the bump and the bridge, and that all of Miller's tires were slick.
In his opinion, the vehicle rounded the curve approaching the bridge exceeding the speed limit, which was 30 mph, and hit the first hump which caused her car to come up in the air. When she came back down, her vehicle skidded over to the left lane from her tires being slick. She then struck the superstructure of the bridge on the right and then again on the left across from the point where the car left the bridge. Byrd again gave his opinion that Miller exceeded the posted speed.
On redirect, Byrd stated that he was not at the accident scene, did not know what speed she was driving and had never talked with her about her speed.
*58 On recross, Byrd stated that he determined from the angle of the car from the second point of impact to the place it went off the bridge that Miller had lost control of the car before approaching the spot of sand and that she never went over any sand.
The plaintiffs next called George William Douglas, a Professor and Chairman of Mechanical Engineering at the University of South Alabama. He was tendered as an expert in the field of Mechanical Engineering without objection. It was his opinion that sand located on a concrete bridge would affect one's ability to control that automobile under the conditions as described. An attempt to regain control or keep control of a car would be made extremely more difficult. Douglas further testified that from his experience, to establish the speed of a vehicle before an accident happened, one needs physical evidence such as the presence and type of skid marks, measurements of the skid marks and, if possible, statements by witnesses as to the sequence of events and location of object at given times. In his expert opinion, if there were no witnesses as to the speed, or any evidence of skid marks, or any measurements of any distances from where the car started with a particular motion, and where it stopped, he could not give an opinion as to the mechanics of what happened in a particular accident, nor did he know of anyone who could give an opinion with any reasonable certainty. He could not form an opinion as to the causative factors that created the accident without measurements and some other points indicating contact.
On cross-examination, Douglas admitted that it would be better for him, if he arrived at the scene right after the accident, to see how slick the road was, how hard it was raining, how much sand was on the road, and the condition of the car and tires. Douglas further stated that he had never personally investigated any accidents on the scene. Douglas also admitted that he was not qualified as an accident reconstructionist.
For the defendant, Stiglet called Bill Dillion, employed with the State Highway Patrol for the past thirty years. He had accident investigation instruction at the Mississippi Highway Patrol Academy, at the Northwestern Traffic Institute and from several other instructors. For thirty years, he worked and developed the facts and causations in a thousand plus separate accidents. Plaintiffs' counsel made a continuing objection as to any opinion testimony given by this officer. He testified as to his observations at the accident scene. After the ambulance left, he inspected the surface of the roadway and found that it was rainy and had been misting rain. He walked the bridge and saw sand on the sides of the bridge, and inspected the vehicle and saw the tires, noticing that the back ones were slick. Dillion's opinion as to the cause of the accident was as follows: "First, wet road. Two, slick tires. Three, speed." He went over the road surface several times and did not notice any paint, nor did he see any sand on the bridge that in any way contributed to the accident.
On cross-examination, Dillion stated that he never talked to Miller or any other witness, that he did not see the accident, that no one told him the speed of the car at the time of the accident, and that he did not see the sand that Officer Byrd saw and marked.
Several photographs of the bridge, taken right after the accident, were admitted into evidence and used during examination of both police officers. These photographs showed little sand and were consistent with the officers' testimony.

II.

DID THE TRIAL COURT ERR IN ALLOWING THE OFFICERS TO TESTIFY AS TO THE CAUSE OF THE PLAINTIFF'S ACCIDENT?
As the plaintiffs admit, the admission of expert testimony is addressed to the sound discretion of the trial judge, and this is true whether or not the case is tried under the new Mississippi Rules of Evidence. Hickox By and Through Hickox v. Holleman, 502 So.2d 626, 637 (Miss. 1987); Boyd v. *59 Lynch, 493 So.2d 1315, 1319-20 (Miss. 1986); Hardy v. Brantley, 471 So.2d 358, 366 and n. 3 (Miss. 1985). In this case, the plaintiffs questioned both the qualifications of the uniformed police officers, particularly due to their status as police officers, and the extent of the opinions allowed to be given.

A.
May police officers in general, and the officers in this case in particular, be qualified as accident reconstructionists?
This Court first permitted the expert opinion testimony of accident reconstructionists in Hollingsworth v. Bovaird Supply Co., 465 So.2d 311 (Miss. 1985), which specifically overruled ten prior Mississippi cases, in eight of which the expert was a law enforcement official. Those eight cases are: Lynch v. Suthoff, 220 So.2d 593 (Miss. 1969); Jones v. Welford, 215 So.2d 240 (Miss. 1968); Marsh v. Johnson, 209 So.2d 906 (Miss. 1968); Holifield v. Nester Chevrolet Co., 207 So.2d 636 (Miss. 1968); Schumpert v. Watson, 241 Miss. 199, 129 So.2d 627 (1961); Delta Chevrolet Company v. Waid, 211 Miss. 256, 51 So.2d 443 (1951); Standard Oil Company v. Crain, 199 Miss. 69, 23 So.2d 297 (1945); Columbus and Greenville Railway Co. v. Robinson, 189 Miss. 675, 198 So. 749 (1940).
Further, Hollingsworth noted that a majority of American jurisdictions now permit the use of expert accident reconstruction opinion, citing seven cases, in four of which the expert was a law enforcement official. Those four cases are Waldron v. Raccio, 166 Conn. 608, 353 A.2d 770, 773-4 (1974); (an officer qualified as an expert could testify as to point of impact); Mayeaux v. American Mutual Liberty Ins. Corp., 409 F.2d 508, 510 (5th.Cir.1969) (broad latitude is given a police officer, where qualified as an expert, in accident reconstruction testimony); State v. Stoddard, 147 Mont. 402, 412 P.2d 827, 831 (1966) (patrolman, apparently qualified by experience alone, should be allowed to state opinion as to point of impact); Dudek v. Popp, 373 Mich. 300, 129 N.W.2d 393, 396 (1964) (Michigan had a rule identical to Mississippi Rule of Evidence 704; but an officer could testify as to the point of impact).
This Court has been unable to find any jurisdiction which has even questioned whether an officer's expert opinion testimony as to an accident is admissible to the same extent as that of any other accident reconstructionist. The courts have assumed that police officers in cases such as this can be qualified to testify to the same extent as an expert not in law enforcement. The Montana Supreme Court has specifically so held. Foreman v. Minnie, 689 P.2d 1210, 1212 (Mont. 1984). A Tennessee Court of Appeals held that an officer should not have been permitted to testify to conclusions drawn from physical facts found at the scene of an automobile accident "unless he had been properly qualified as an expert," implying that he could have so testified as an expert had he been qualified. Walden v. Wylie, 645 S.W.2d 247, 251 (Tenn. Ct. App. 1982). Even Kansas, which severely limits the extent of opinions by accident reconstructionists, places the very same limitations on both police officers and non-police experts. Lollis v. Superior Sales Co., Inc., 224 Kan. 251, 580 P.2d 423, 431 (1978).
All these cases are consistent with new Mississippi Rule of Evidence 702, which indicates that a witness may be qualified as an expert by knowledge, skill, experience, training, or education. Further, this Court does not agree that jurors automatically give more credence to the testimony of a police officer. Conversely, the Court fails to see how it could be unfair for a qualified police officer to testify, but not for a paid private accident reconstruction expert to testify. Note too that virtually all of the cases cited under section B below imply that police officers may be qualified as an accident reconstructionist to the same extent as any other such expert.
The guideline to follow when expert opinion was offered in pre-rules cases directed (1) an inquiry as to whether the subject matter of the proffered testimony is such that expert opinion evidence will be of assistance to the trier of fact, and (2) an inquiry into the witnesses' qualifications. Hardy v. Brantley, 471 So.2d 358, 366 *60 (Miss. 1985). Hall v. Hilbun, 466 So.2d 856, 873 (Miss. 1985); See House v. State, 445 So.2d 815, 822 (Miss. 1984). As previously noted in Hollingsworth, supra, accident reconstruction cases are recognized as a type subject matter in which expert opinion would be of assistance to the trier of fact. The record supported the trial judge's finding that the highway patrolmen's knowledge, skill, experience, training and education were sufficient for them to be termed experts. Additionally, their testimony evidences a thorough investigation of this accident.
It is this Court's opinion that their qualifications are comparable to or greater than the qualifications of the experts in the various cases cited herein. The trial court ruled properly in permitting them to testify as experts in accident reconstruction.

B.
Should the officers have been permitted to testify as to the cause of the accident?
This Court holds that testimony of the officers as to the cause of the accident was admissible. An opinion on an ultimate issue, though not inadmissible per se, is nevertheless inadmissible if not helpful to the trier of fact. Hughes v. Tupelo Oil Co., Inc., 510 So.2d 502, 504 (Miss. 1987). It is this Court's opinion that on the whole, the officers' opinions were helpful to the triers of fact, that it would have been difficult for the officers to have given their expert opinions in any other way, and that the jury was not just as capable of drawing a proper conclusion from the particular facts as were the officers. Furthermore, this Court already allows medical doctors to testify that failure to render the required level of care has resulted in loss of a reasonable probability of substantial improvement or that absent malpractice, there is a reasonable probability that survival would or would not have been different. Ladner v. Campbell, 515 So.2d 882, 888-889 (Miss. 1987).
It is true that the function of the jury as finder of fact must not be usurped, but the remedy for such possible usurpation is cross-examination of an expert's qualifications and the basis of his conclusions. Hollingsworth, 465 So.2d at 314. The expert may be required to disclose the underlying facts or data. Miss.R.Evid. 705.
The jury, as is their province, may reject the expert's testimony just as they might any other witness... . Furthermore, like any other witness offered as an expert, the trial judge is called upon to exercise his sound discretion in determining whether the witness is legitimately qualified as an expert in the applicable fields of scientific knowledge.
Hollingsworth, 465 So.2d at 314-315.
In this regard, while the presence of rain and slick tires may be easily observed by laymen, speed by use of hindsight, is not. Therefore, the trial judge, in a case such as this, should determine whether the qualifications as an accident reconstructionist include expertise in retroactively determining speed. An expert witness must be qualified in whatever field of scientific knowledge to which his expert testimony is related. However, any errors in the admission of the opinions of excessive speed is harmless due to the overwhelming evidence in support of the verdict. This testimony includes the total absence of paint on the bridge, the absence of sand in the path of the car, the passage of three days since the work stoppage, and the swerving path and distance of the car over the bridge. Additionally the testimony of the plaintiff's expert that he could not form an opinion as to the cause of the accident, left the plaintiffs with virtually no evidence that rain, tires and speed were not the cause of the accident, but sand was the cause. See Noel's Auto Electric Service, Inc. v. Jones, 516 So.2d 503 (Miss. 1987) (on petition for rehearing); Marsh v. Johnson, 209 So.2d 906, 908 (Miss. 1968). Therefore this Court holds that the trial court's ruling on this evidence did not constitute reversible error.

III.

WAS THE TRIAL COURT IN ERROR BY ALLOWING JURY INSTRUCTION DS-11 TO BE SUBMITTED TO THE JURY?
The instruction reads in part as follows:

*61 The Court further instructs the jury that the driver of an automobile on a public highway must drive within the specified speed limit. The court instructs the jury that the failure of a driver of an automobile to drive within the specified speed limit constitutes negligence.
....
The court further instructs the jury that if you find from a preponderance of the evidence in this case that the plaintiff, CHARLENE L. MILLER, failed to drive her automobile within the specified speed limit, then said CHARLENE L. MILLER was negligent.
The appellant's rebuttal brief states that the first proposition is so important as to be the only subject matter of this appeal, apparently conceding that if the police officers were properly permitted to testify, then the instruction was proper. The plaintiffs' argument in their first brief is essentially that there was insufficient evidence for the instruction. If the officers' testimony was admissible, any error is harmless for the same reason the testimony as to speed was harmless.
Furthermore, Mississippi Rule of Civil Procedure 51(b)(3) states the following:
No party may assign as error the granting or the denying of an instruction unless he objects thereto at any time before the instructions are presented to the jury... . All objections shall be stated into the record and shall state distinctly the matter to which objection is made and the grounds therefor.
Nothing in the record shows any such specific objection.
AFFIRMED.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and ROBERTSON, SULLIVAN, ANDERSON and ZUCCARO, JJ., concur.
HAWKINS, P.J., and GRIFFIN, J., dissent.
HAWKINS, Presiding Justice, dissenting:
I respectfully dissent as to the admission of Mike Byrd's testimony permitting him to express opinions as to the cause of the accident.
The whole idea of an expert is to make a technical examination of facts in the field in which he is qualified,, and explain such facts to a jury, which they would not otherwise fully comprehend, in order to shed light upon, or assist them in determining the ultimate issue in the case.
How badly was the man hurt? The doctor examines him clinically, makes x-rays, laboratory tests, and so on, and explains what he has found as simply as he can. This is helpful to the jury in determining the issue of damages.
What was wrong with the car? The mechanic hears a certain sound in the motor, disassembles it, and finds bearings worn, piston rings burned, which he explains to the jury. Such information could be beneficial to the jury in issues such as damage, defective design, or perhaps faulty maintenance.
To me there is a difference between an expert, who makes his living in a special field, and an experienced layman who simply expresses a common-sense opinion that some, and perhaps all of the jurors already know.
What juror, knowing that there was no sand or other substance to cause the car to slide, and also knowing the tires were slick, that it had been raining, and the length and type of the tire marks, would not have concluded the very same thing the officer did? Speed, rain and slick tires were all probable contributing causes of the accident.
I am not sure I understand the maundering majority opinion. If it is saying that we are going to let experienced laymen express their opinions as to causes of accidents, there is not a patrolman, deputy sheriff, traffic policemen, or constable who cannot qualify. And, let us not forget truck drivers and traveling salesmen. They see a lot of accidents, too.
*62 The danger of permitting such opinions is that we remove the levees to the river of evidence, and permit any kind of speculative testimony the parties wish to be heard by the jury.
Well, why is that such a danger? Because it could be very wrong.[1] Common sense ideas do not supply qualifications for a specialty. Shade tree mechanics and quack doctors no doubt have an abundance of common sense. Yet our common sense also tells us not to seek one of them out for assistance if we have any alternative.
I would not hold the trial court in error for permitting Officer Byrd to express expert opinion as to the "yaw" mark he found, and what such a mark made by a tire means. His training and experience gave him the expertise to explain this particular mark to the jury, without which the jury might not have understood its significance. Highway patrolmen and traffic officers are trained to look at tire marks, gouge marks, and other signs which appear following accidents, which invariably signify certain facts, such as whether the car was accelerating or decelerating, or sliding, the point of impact, and so on. In these carefully limited circumstances, it should be proper for an investigating officer to set out and describe such marks, and if a jury would not otherwise understand their significance, to offer some explanation as to an isolated, limited fact. That, however, is the limit of their "expertise." They are not mathematicians, physicists, or mechanical engineers. Officer Byrd showed no qualifications to state the speed of the car as it went onto the bridge.
GRIFFIN, J., joins this opinion.
NOTES
[1] Mrs. Miller testified to having Huntington's Disease, and it is presumed that for this reason she sued by next friend. The other plaintiffs are wrongful death beneficiaries.
[1] A good illustration of this is Hooten v. State, 492 So.2d 948 (Miss. 1986), where a "graphologist" came to the precisely opposite conclusion on the authorship of some questioned handwriting as the handwriting expert trained for three years in the Federal Bureau of Investigation Laboratory in Washington.