576 So.2d 1265 (1991)
Mattie BROWN
v.
Joseph CUCCIA.
No. 89-CA-0701.
Supreme Court of Mississippi.
March 13, 1991.
As Modified March 27, 1991.
James H. Walker, Cleveland, for appellant.
Andrew M.W. Westerfield, Jacks Adams & Westerfield, Cleveland, for appellee.
EN BANC.
SULLIVAN, Justice, for the Court:
Mattie Brown appeals the refusal of the Circuit Court of the Second Judicial District of Bolivar County to enter either an additur or grant a new trial on damages following a jury verdict and judgment in her favor in the amount of $3,000 in a personal injury action against Joseph Cuccia.
Finding the circuit court erred, we enter an additur of $10,000.00. If the additur is not accepted by the plaintiff and paid by the defendant within thirty days from date of our mandate, this cause will be reversed and remanded for a new trial on damages alone.

FACTS
Mattie Brown was riding in a 1974 Pontiac being driven by her husband, J.D. Brown, in an easterly direction on Sunflower Road, Highway 8, in Cleveland just after noon on a rainy Friday, October 24, 1986. *1266 The street at the intersection with Chrisman Avenue has four lanes. The Pontiac was in the left lane, and at the intersection it was struck in the rear by a 1978 Toyota being driven by Joseph Cuccia.
City policeman Tommy Taylor arrived on the scene just a few minutes after the accident. He noticed that the Toyota had a headlight broken, and the front bumper bent. He noticed only scratches on the Pontiac at most.
In the car with Cuccia were two other students from Delta State University, Allison Rowe and Kalista Vincent. When Taylor investigated the accident, the only person reporting any injury was Vincent, who had bitten her lip, and she never saw a doctor for this. Mrs. Brown was observed by Vincent and Rowe getting out of the Pontiac with her husband and inspecting it.
Cuccia, Rowe and Vincent described the vehicles' collision as a bump, but the Browns testified the collision as having produced a loud noise, like "dynamite." Mrs. Brown testified the Pontiac was struck in the center rear, with damage done to the rear on the left and right rear fenders. Photographs of the Pontiac show minimal damage at most to a deteriorated automobile.
On October 28, 1986, Mrs. Brown went to see her physician Arthur Lindsey, Jr., M.D., a general family practice physician in Cleveland. He admitted her to the Bolivar County Hospital on November 1, where she was hospitalized until released November 7. Dr. Lindsey saw her in his clinic on October 28 and 30, and while she was hospitalized. Her complaint was pain in chest, lower back, left leg, and left hip. Upon examination he found pain in her lower back and contusions on the chest, knee and hip.
Dr. Lindsey saw Mrs. Brown eight times on office visits in 1987, eleven times in 1988, and three times in 1989. It was his professional opinion that, in addition to the contusions from which she recovered, the accident had resulted in two herniated discs at the L-4 and L-5 level for which she suffered a twenty percent medical disability to the body as a whole, and a total disability as to any manual labor. It was his opinion that she should have surgery, which would necessitate an expenditure of approximately $7,000 in doctor and hospital expense.
Dr. Lindsey's bill for his professional services was $751, and the hospital bill was $1,553.40. In addition Mrs. Brown had purchased prescription drugs in the amount of $132.03.
Mrs. Brown testified she saw a television advertisement[1] of John W. McFadden, M.D., a pain specialist practicing in Tupelo, who testified he saw her on November 26, 1986. He performed a clinical test on her, took x-rays and did a CT Scan of the discs at the L-4, L-5, and S-1 sacral level. He also performed a thermogram, which according to the doctor was designed to detect increased heat on the skin. He injected her with cortisone to relieve her pain. He next saw Mrs. Brown on December 17, 1986, at which time he performed a physical examination. He next saw her on December 31, but did not examine her at that time. He prescribed Feldene, an anti-inflammatory drug, and gave her more cortisone, and put an ace bandage on her left knee. He last saw Mrs. Brown May 15, 1987, at which time he performed a diskography, which he described as a test whereby "you pass a needle into the intervertebral disk. You put it in the nucleus or soft portion of the disk and then put pressure or increase the pressure in the nucleus by putting in dye or saline." It was his professional opinion that she had suffered "complete rupture of the annulus at the L4 and L5 disk." Dr. McFadden's bill for his professional services was $3,036. He was of the opinion that Mrs. Brown would require surgery and referred her to William R. Brown, M.D., a neurosurgeon, who was practicing at the time in Louisville, but who later moved to Corinth. Dr. Brown recommended surgery following two visits to *1267 him. His bill for professional services was $145. No myelogram test was ever done on her.
At the time of the accident Mrs. Brown was 59 years of age, a housewife in good health, the mother of nine children and "about 20" grandchildren. She testified to being in constant pain following the accident, and unable to perform her household duties.
Following trial the jury awarded Mrs. Brown $3,000 in damages. The circuit judge overruled a motion for an additur or a new trial, and she has appealed.

LAW
Dr. McFadden only testified by deposition. During his deposition it was developed through cross-examination that the administrative law judge in a workers' compensation hearing had refused to accept his medical findings because he admitted he had committed perjury in another case. The circuit judge refused to permit the introduction of the order of the administrative law judge excluding Dr. McFadden's testimony in the workers' compensation case, but did allow the cross-examination of the doctor in which he conceded he had admitted committing perjury in that case. He went on to testify in the deposition that this was a mistaken admission, that he had been tricked into admitting committing perjury. It was also brought out on cross-examination of Dr. McFadden that Mrs. Brown's attorney in Cleveland had sent him several patients who were involved in litigation. The jury may have discounted Dr. McFadden's testimony, as of course it had the right to do. Miller by Miller v. Stiglet, Inc., 523 So.2d 55, 60 (Miss. 1988); Hollingsworth v. Bovaird Supply Co., 465 So.2d 311, 314-315 (Miss. 1985); Schoppe v. Applied Chemicals Division, Mobley Co., Inc., 418 So.2d 833, 837 (Miss. 1982).
At the same time Mrs. Brown's local physician, whose reputation and integrity were never questioned, corroborated the findings of Dr. McFadden. The unquestioned medical expenses from Dr. Lindsey, the Bolivar County Hospital and drugs Dr. Lindsey prescribed, totaled $2,436. The jury may very well have had some doubts about the damage to the Pontiac, Mrs. Brown's failure to complain of being hurt to the officer, but no evidence whatever was adduced disputing the opinion of Dr. Lindsey that Mrs. Brown had suffered a very disabling injury in the accident affecting the discs at the L-4 and L-5 level. Excluding Dr. McFadden's bill, the verdict was less than $600 above her actual expenses expended to Dr. Lindsey, the Bolivar County Hospital and for drugs.
We must conclude that the verdict of the jury was so low as to evince bias, and Mrs. Brown is entitled to a new trial on damages or an additur.
We find that the plaintiff is entitled to an additur of $10,000.00, making the total damage award $13,000.00, which, if accepted by the plaintiff and paid by the defendant within thirty days from the date of the mandate of this Court will terminate this case; otherwise, the cause will be reversed and remanded for a new trial on damages alone.
The plaintiff shall have ten days from the date of the mandate of this Court within which to notify the defendant of its acceptance or rejection of this additur, and the defendant shall have twenty days therefrom to pay the same.
AFFIRMED ON CONDITION OF ADDITUR; OTHERWISE REVERSED AND REMANDED FOR A NEW TRIAL ON DAMAGES ALONE.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and PRATHER, ROBERTSON, BANKS and McRAE, JJ., concur.
HAWKINS, P.J., and ROBERTSON, J., specially concur.
McRAE, J., concurs.
PITTMAN, J., dissents.
HAWKINS, Presiding Justice, specially concurring:
I concur for the reason that Cuccia made no effort to have Mrs. Brown examined by a court-appointed expert which in my view *1268 the circuit judge had the discretionary authority to order under Rule 706 of the Mississippi Rules of Evidence. From the record I glean no serious challenge at trial to Dr. Lindsey's medical opinion regarding Mrs. Brown.
ROBERTSON, J., joins this opinion.
McRAE, Justice, concurring:
I concur and would have increased the additur substantially.
PITTMAN, Justice, dissenting:
I would affirm. The jury awarded $3,000.00 to the plaintiff in her claim for personal injuries. The award of $3,000.00 does not evidence bias or prejudice and in fact may evidence discernment. While the award may be low, the majority's additur evidences a simple disagreement with the jury and is not of a magnitude that should cause our additur or a reversal.
NOTES
[1] Mrs. Brown's testimony is somewhat confused on this issue. In deposition, she initially said that Dr. Lindsey recommended she see Dr. McFadden. Neither Dr. Lindsey's nor Dr. McFadden's testimony supports this.